1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EUGENE KORTE,

                              NO. CIV. S-12-541 LKK/EFB

        Plaintiff,

     v.

DOLLAR TREE STORES, INC.,                    O R D E R

        Defendant.

_____/

    Plaintiff Eugene Korte sues defendant Dollar Tree Stores, Inc., alleging: (i) failure to comply with wage and hour laws, (ii) failure to provide proper wage statements, (iii) failure to pay wages due at termination, (iv) retaliatory termination, and (v) age discrimination. The first four causes of action are pled under the California Labor Code; the fifth under California's Fair Employment and Housing Act. According to Dollar Tree, Korte "is a discharged member of a decertified class of current and former Dollar Tree employees who worked as Store Managers at California retail store locations between 12/24/2004 and 5/26/2009 and who raised wage and hour claims challenging their exempt

1

1  classification."[1] (Notice of Removal, ECF No. 1, at 1.)

2      Korte filed suit in Sacramento County Superior Court on
3  December 8, 2011. The case was removed to this court on February
4  29, 2012. Dollar Tree now moves for summary judgment, or in the
5  alternative, partial summary judgment.

6      The motion came on for hearing on May 28, 2013. For the
7  reasons set forth below, the court will grant Dollar Tree partial
8  summary judgment as to certain of Korte's claims.

9  **I. FACTS**

10      The following facts are undisputed or sufficiently
11  uncontroverted.

12      Korte began working for Dollar Tree in 1999. (Defendant's
13  Statement of Undisputed Facts ("DSUF") 4, ECF No. 34.) From May 10,
14  2007 until his termination in April 2011, Korte was the Store
15  Manager and/or the Z Manager[2] of at least four different Dollar
16  Tree stores in the Sacramento region. (DSUF 5; Plaintiff's Response
17  to Defendant's Statement of Undisputed Facts ("PR-DSUF") 5, ECF
18  No. 39.) Store Managers, in turn, are supervised by District
19  Managers. (DSUF 1, 2.) Dollar Tree classifies Store Managers and
20  District Managers as exempt from overtime compensation, while

21  _____

22      [1] The decertification order is available at <u>Cruz v. Dollar
Tree Stores, Inc.</u>, Nos. 07–2050/07–4012, 2011 WL 2682967, 2011 U.S.
23  Dist. LEXIS 73938 (N.D. Cal. Jul. 8, 2011) (Conti, J.).

24      [2] A Z Manager is a Store Manager without a store assignment.
(DSUF 4.) The parties do not discuss the differences between these
two positions in any detail, and the differences do not appear
25  material to this motion; accordingly, the remainder of this order
will simply describe Korte's position with Dollar Tree during the
26  2007 - 2011 period as "Store Manager."

1 Assistant Store Managers and all other retail store employees
2 (termed "Associates," most of whom work part-time schedules) are
3 classified as non-exempt. (DSUF 3.)

4     A Store Manager is the highest-level manager at each Dollar
5 Tree location. (DSUF 6.) Korte's duties as Store Manager included
6 recruiting, hiring, supervising, evaluating, and disciplining
7 employees; planning staffing and work schedules; ordering
8 merchandise; deciding how to display merchandise (within company
9 guidelines); and training future Store Managers. (DSUF 9-12, 19-20,
10 25, 28, 34, 40; PR-DSUF 40.) Although he was in charge of his store
11 location, Korte could not make certain decisions, such as adding
12 hours to employees' schedules or discharging employees, without
13 authorization by the District Manager and/or Dollar Tree's Human
14 Resources department. (DSUF 7, 12, 27; PR-DSUF 12, 27.)

15     Dollar Tree expected Store Managers to spend the majority of
16 their time on management tasks and to delegate non-management
17 tasks. (DSUF 43, 44.) This expectation was communicated to Store
18 Managers in various ways, including performance evaluations, a
19 Store Manager job description, and various documents setting forth
20 company policies and procedures. (DSUF 44.) Korte was aware of
21 Dollar Tree's expectation as to how he should structure his time.
22 (DSUF 43.)

23     Store Managers were to submit electronic certifications each
24 week confirming that they had spent at least 50% of their time on
25 exempt tasks. (DSUF 96.) If a Store Manager was unable to make this
26 certification, (s)he was required to set out the reasons why (s)he

3

1  could not do so. (Id.) Korte acknowledges that Dollar Tree never

2  suggested that he should be anything but truthful in filling out

3  the certifications, and he maintains that he was truthful in

4  completing them. (DSUF 98-100.)

5      Dollar Tree maintains a formal non-discrimination and non-

6  harassment policy ("Policy"). (DSUF 52.) The Policy forbids

7  discrimination and/or harassment on the basis of sex, race, sexual

8  orientation, pregnancy, religion, national origin, age, disability,

9  and any other status protected by law. (DSUF 53.) The Policy

10 specifically prohibits "verbal comments about an individual's body"

11 and "unwelcome physical behavior such as . . . touching." (DSUF

12 54.) The Policy is found in an employee handbook, which Korte

13 distributed to new employees. (DSUF 52, 55.) Korte also attended at

14 least three company trainings on sexual harassment. (DSUF 61.)

15 Korte understood that the Policy prohibited discrimination and

16 sexual harassment, and that as Store Manager, he was obliged to

17 enforce the Policy. (DSUF 58.)

18     In 2002, Dollar Tree received reports that Korte had

19 inappropriately touched female employees, including putting an arm

20 around a female associate's shoulders and pulling her towards him

21 to talk to her, as well as pinching another female associate on the

22 arm. Dollar Tree also received a report that Korte had commented on

23 the placement of keys on a necklace in relation to a female

24 employee's breasts. Korte was disciplined by Dollar Tree for this

25 inappropriate behavior. (DSUF 62.) He was also directed to review

26 Dollar Tree's sexual harassment policy and given a written warning

that further sexual harassment complaints would result in disciplinary action, up to and including termination. (DSUF 64.)

In August and September 2007, shortly after Korte became Store Manager in Roseville, California, Dollar Tree received reports from several of his female subordinates that he had made inappropriate remarks about their bodies, pinched one female associate's waist, run his finger down the side of another female associate's neck, and touched a third female associate's elbow. (DSUF 67.) After the complaints were investigated by Dollar Tree's Regional Human Resources Manager, Korte's District Manager warned Korte regarding his inappropriate behavior. He was transferred to another store. (DSUF 69.)

In June 2009, Dollar Tree again received a complaint from a female employee regarding inappropriate behavior by Korte. (DSUF 70.) She complained that Korte did several things that made her feel uncomfortable: he invaded her space (despite being informed that she did not like people too close to her), whispered in her ear, followed her when she would try to move away, and told her that she "still drive[s] [him] crazy." (DSUF 71.) Korte was again counseled regarding inappropriate behavior and warned to stay away from the associate in question. (DSUF 72.)

In March 2011, Dollar Tree received a Department of Fair Employment and Housing ("DFEH") Complaint of Discrimination filed by a former employee, Laura Gaines, alleging that Korte had subjected her to sexual harassment. Gaines complained that Korte commented on her appearance inappropriately, told her that she

1   should wear her Dollar Tree apron with nothing underneath, and made

2   inappropriate comments when she would bend over. (DSUF 74.)

3          After receipt of the DFEH Complaint, Dollar Tree's Director of

4   Human Resources and its Regional Human Resources Manager met with

5   Korte to discuss Gaines's sexual harassment allegations. (DSUF 75.)

6   Korte was subseqently suspended; Dollar Tree claims this was due to

7   the DFEH complaint, while Korte contends it was due to age

8   discrimination and retaliation. (DSUF 77; PR-DSUF 76.) Dollar Tree

9   ultimately entered into a monetary settlement with Gaines, which

10  resolved the administrative complaint. (DSUF 79.)

11         After an investigation was concluded, Korte was terminated on

12  April 18, 2011 for "conduct unbecoming an officer of the Company

13  due to inappropriate behavior," both based on his conduct towards

14  Gaines and in the context of the history of complaints against him.

15  (DSUF 81.) Korte contends that his termination was due to age

16  discrimination and retaliation. (PR-DSUF 80.)

17         Dollar Tree moves for summary judgment or partial summary

18  judgment in its favor.

19  **II. STANDARD RE: SUMMARY JUDGMENT**

20         Summary judgment is appropriate "if the movant shows that

21  there is no genuine dispute as to any material fact and the movant

22  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

23  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the movant's

24  burden "to demonstrate that there is 'no genuine issue as to any

25  material fact' and that they are 'entitled to judgment as a matter

26  of law'"); Walls v. Central Contra Costa Transit Authority, 653

6

1  F.3d 963, 966 (9th Cir. 2011) (same).

2       Consequently, "[s]ummary judgment must be denied" if the court

3  "determines that a 'genuine dispute as to [a] material fact'

4  precludes immediate entry of judgment as a matter of law." Ortiz v.

5  Jordan, 562 U.S. __, 131 S. Ct. 884, 891 (2011), quoting Fed. R.

6  Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of

7  Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (same).

8       Under summary judgment practice, the moving party bears the

9  initial responsibility of informing the district court of the basis

10 for its motion, and "citing to particular parts of the materials in

11 the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact

12 cannot be . . . disputed." Fed. R. Civ. P. 56(c)(1); In re Oracle

13 Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010)

14 ("The moving party initially bears the burden of proving the

15 absence of a genuine issue of material fact") (citing Celotex v.

16 Catrett, 477 U.S. 317, 323 (1986)).

17      A wrinkle arises when the non-moving party will bear the

18 burden of proof at trial. In that case, "the moving party need only

19 prove that there is an absence of evidence to support the non-

20 moving party's case." Oracle Corp., 627 F.3d at 387.

21      If the moving party meets its initial responsibility, the

22 burden then shifts to the non-moving party to establish the

23 existence of a genuine issue of material fact. Matsushita Elec.

24 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986);

25 Oracle Corp., 627 F.3d at 387 (where the moving party meets its

26 burden, "the burden then shifts to the non-moving party to

1  designate specific facts demonstrating the existence of genuine

2  issues for trial"). In doing so, the non-moving party may not rely

3  upon the denials of its pleadings, but must tender evidence of

4  specific facts in the form of affidavits and/or other admissible

5  materials in support of its contention that the dispute exists.

6  Fed. R. Civ. P. 56(c)(1)(A).

7      The court's function on a summary judgment motion is not to

8  make credibility determinations or weigh conflicting evidence with

9  respect to a disputed material fact. See T.W. Elec. Serv. v. Pac.

10  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

11      "In evaluating the evidence to determine whether there is a

12  genuine issue of fact," the court draws "all reasonable inferences

13  supported by the evidence in favor of the non-moving party." Walls,

14  653 F.3d at 966. Because the court only considers inferences

15  "supported by the evidence," it is the non-moving party's

16  obligation to produce a factual predicate as a basis for such

17  inferences. See Richards v. Nielsen Freight Lines, 810 F.2d 898,

18  902 (9th Cir. 1987). The opposing party "must do more than simply

19  show that there is some metaphysical doubt as to the material

20  facts . . . . Where the record taken as a whole could not lead a

21  rational trier of fact to find for the nonmoving party, there is no

22  'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87

23  (citations omitted).

24  **III. ANALYSIS**

25      **A. Request for Judicial Notice**

26      Dollar Tree has requested that the court take judicial notice

1 of six documents filed in support of its motion. (ECF No. 35.) The
2 court will not rule on the request for judicial notice, as it did
3 not rely on these documents in reaching its decision herein.

4 **B. Evidentiary Objections**

5 "In general, only admissible evidence may properly be
6 considered by a trial court in granting summary judgment."
7 Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324,
8 1335 n.9 (9th Cir. 1980).

9 Dollar Tree has filed objections to 46 statements in a
10 declaration filed by Korte in support of his opposition to this
11 motion. (ECF No. 45.) The majority of these statements do not bear
12 on the court's decision herein, and therefore Dollar Tree's
13 objections to them need not be addressed. The court need only
14 decide evidentiary objections that are material to its ruling.
15 Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010). Any
16 pertinent evidentiary objections will be addressed as they arise.

17 I turn now to the substance of Dollar Tree's motion.

18 **C. Motion for Summary Judgment**

19 As the court is sitting in diversity, it decides this motion
20 under California's substantive law. Erie R.R. Co. v. Tompkins, 304
21 U.S. 64, 78 (1938).

22 **1. Was Korte an exempt employee?**

23 The dispositive question as to many of the issues raised in
24 this motion is whether Korte was exempt from California law
25 governing overtime pay, meal periods, rest breaks, itemized wage
26 statements, and waiting time penalties (the latter for wages not

1  paid upon termination). Dollar Tree contends that Korte, as a Store

2  Manager, was exempt from these protections, and that consequently,

3  it should be granted summary judgment on these claims.

4  **a. Standard for exemption**

5  California law requires that all employees receive overtime

6  compensation and authorizes civil actions to recover unpaid

7  overtime. Cal. Lab. Code §§ 510, 1194.

8  The California Industrial Welfare Commission ("IWC"), a state

9  agency established in 1913, promulgated regulations in the form of

10 "wage orders," which governed employment matters such as maximum

11 hours of work and overtime pay. Indus. Welfare Comm'n. v. Superior

12 Court, 27 Cal. 3d 690, 700 (1980); Cal. Lab. Code § 70. "The IWC's

13 wage orders, although at times patterned after federal regulations,

14 also sometimes provide greater protection than is provided under

15 federal law . . . ." Ramirez v. Yosemite Water Co., Inc., 20 Cal.

16 4th 785, 795 (1999); 29 U.S.C. § 218(a). In issuing its wage

17 orders, "the IWC acted in a quasi-legislative capacity. Although

18 the IWC was defunded effective July 1, 2004, its wage orders remain

19 in effect." Johnson v. Arvin-Edison Water Storage Dist., 174 Cal.

20 App. 4th 729, 735 (2009) (internal citations omitted).

21 Cal. Lab. Code § 515(a) authorized the IWC to "establish

22 exemptions [subject to certain qualifications] from the requirement

23 that an overtime rate of compensation be paid . . . for executive,

24 administrative, and professional employees . . . ." As statutory

25 protections for overtime pay are to be liberally construed, any

26 "exemptions from statutory mandatory overtime provisions are

1    narrowly construed." <u>Ramirez</u>, 20 Cal. 4th at 794. Application of

2    the exemptions is "limited to those employees plainly and

3    unmistakably within their terms." <u>Nordquist v. McGraw-Hill Broad.</u>

4    <u>Co.</u>, 32 Cal. App. 4th 555 (1995). Further, "the assertion of an

5    exemption from the overtime laws is considered to be an affirmative

6    defense, and therefore the employer bears the burden of proving the

7    employee's exemption." <u>Ramirez</u>, 20 Cal. 4th at 794-5.

8        IWC Wage Order No. 7, which regulates wages, hours, and

9    working conditions in California's mercantile industry (and

10   therefore applies to Dollar Tree), exempts from overtime pay

11   requirements "persons employed in administrative, executive, or

12   professional capacities." Cal. Code Regs. tit. 8, § 11070(1)(A).

13   The executive exemption, at issue in this motion, applies to any

14   employee:

15       (a) whose duties and responsibilities involve the management

16       of the enterprise in which he is employed, or of a customarily

17       recognized department or subdivision thereof;

18       (b) who customarily and regularly directs the work of two or

19       more other employees therein;

20       (c) who has the authority to hire or fire other employees or

21       whose suggestions and recommendations as to the hiring or

22       firing and as to the advancement and promotion or any other

23       change of status of other employees will be given particular

24       weight;

25       (d) who customarily and regularly exercises discretion and

26       independent judgment;

1      (e) who is primarily engaged in duties which meet the test of

2      the exemption; and

3      (f) whose monthly salary is equivalent to no less than two

4      times the state minimum wage for full-time employment.

5  Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(a)-(f).

6      For our purposes, the critical requirement lies in subsection

7  (e): was Korte "primarily engaged in duties which meet the test of

8  the exemption"? The IWC defines "primarily" as "more than one-half

9  the employee's work time." IWC Wage Order No. 7-2001, § 2(K). The

10  applicable regulation provides that, in making this determination,

11  "[t]he work actually performed by the employee during the course of

12  the workweek must, first and foremost, be examined and the amount

13  of time the employee spends on such work . . . shall be

14  considered." Cal.Code Regs. tit. 8, § 11070(1)(A)(1)(e). But courts

15  are not just to make a quantitative evaluation in determining

16  whether the exemption applies. Rather:

17      A trial court [must inquire] into the *realistic*
   requirements of the job. In so doing, the court should
18  consider, first and foremost, how the employee actually
   spends his or her time. But the trial court should also
19  consider whether the employee's practice diverges from
   the employer's realistic expectations, whether there was
20  any concrete expression of employer displeasure over an
   employee's substandard performance, and whether these
21  expressions were themselves realistic given the actual
   overall requirements of the job.
22

23  <u>Ramirez</u>, 20 Cal. 4th at 802 (emphasis in original). This test seeks

24  to account for attempts, by either side, to game a purely-

25  quantitative system: the employer who tries to avoid paying

26  overtime "by fashioning an idealized job description [with] little

12

basis in reality", and the employee who falls "below the 50 percent mark due to his own substandard performance." Id.

Dollar Tree, as the employer, "bears the burden of proving the employer's exemption." Id. at 794-5. And on summary judgment, it "bears the [initial] burden of proving the absence of a genuine issue of material fact" as to the exemption's existence. Oracle Corp., 627 F.3d at 387.

### b. Korte's evidence

Whether the executive exemption applies to Korte turns not only on the undisputed facts, but also on statements in Korte's declaration, submitted in opposition to this motion. I have considered Dollar Tree's evidentiary objections to the relevant paragraphs of the declaration, and set forth those statements which appear to be free of appropriate objection:

- While a Store Manager, up until the time of my termination in April 2011, I was required to undertake the freight duties at my store, as I did not have a Freight Manager. (Plaintiff's Declaration in Opposition to Defendant's Motion for Summary Judgment ("Korte Decl.") ¶ 18, ECF No. 38.)

- I requested that a Freight Manager be assigned to my store, or, that I be given the authority to hire a Freight Manager from outside Dollar Tree. (Korte Decl. ¶ 18.)

- I was instructed by management not to do the freight function, but not provided the means (bodies) to make that happen. (Korte Decl. ¶ 18.)

- I was not able to submit said certification on many, if not most weeks, while I was a Store Manager (2007-2011), because I was doing primarily non-exempt duties. (Korte Decl. ¶ 28.)

- As was noted earlier herein, I did not have a freight manager and thus was required to do the freight duties at

1    my store. (Korte Decl. ¶ 28.)[3]

2    •    I also performed many other non-exempt functions,
         including, but not limited to, stocking shelves, moving
3        merchandise, and checking out customers. (Korte Decl.
         ¶ 28.)

4

5    •    I received calls from many in Dollar Tree management,
         including, but not limited to, Patricia Doss at
6        corporate, a Dollar Tree attorney who described herself
         as a compliance manager, Market Manager Carlos Hernandez
7        and District Manager Melissa Ruzyla, Sacramento
         Compliance Manager Julia Giddens, Human Resources Manager
8        for Northern California Candance [sic] Camp, all had
         conversations with me about my non compliance. All
9        expressed concern that I was non compliant. (Korte Decl.
         ¶ 29.)

10   •    I was never provided with the freight manager. (Korte
         Decl. ¶ 29.)

11

12                  **c. Dollar Tree's initial showing**

13        Dollar Tree "bears the [initial] burden of proving the absence

14   of a genuine issue of material fact" as to whether Korte is subject

15   to the executive exemption. Oracle Corp., 627 F.3d at 387.

16        Dollar Tree contends that Korte qualified for the executive

17   exemption because it "realistically expected that [he] would be

18   primarily engaged in exempt duties as a store manager." (Memorandum

19   of Points and Authorities in Support of Motion for Summary Judgment

20   and/or Partial Summary Judgment ("Motion") 16:21-23, ECF No. 33.)

21   It communicated this expectation to him "both through the

22   certification process and through the inquiries he received when he

23   responded that he was not performing managerial duties over 50% of

24

25        [3] As explained, this portion of the opinion deals only with
     evidentiary objections. Clearly, the plaintiff's assertion of
26   requirement is factually in dispute.

                                   14

the time." (Motion 17:7-10.) When Korte explained that he spent
more than 50% of his time on non-managerial duties because he
lacked a Freight Manager, Dollar Tree instructed him to train one
of his Assistant Store Managers to be the Freight Manager. (Motion
17:11-13.) In light of these facts, according to Dollar Tree, Korte
was evading the exemption "by failing to adhere to Dollar Tree's
clearly communicated expectations" and "due to his own substandard
performance." (Motion 17:17-18, 17:23.) The company cites <u>Ramirez</u>
for the proposition that "an employee who is supposed to be engaged
in [exempt] activities during most of his working hours and falls
below the 50 percent mark due to his own substandard performance
should not thereby be able to evade a valid exemption." 20 Cal. 4th
at 802. Dollar Tree's argument, essentially, is that Korte spent
more than 50 percent of his time on non-exempt functions because he
failed to meet the company's realistic expectations for job
performance.

These averments, and the evidence proffered in support, are
sufficient to meet Dollar Tree's initial burden on summary
judgment.

### d. Korte's demonstration of a genuine issue of material fact

The burden now shifts to Korte, who must now establish that
there is a genuine issue of material fact as to whether he was an
exempt employee. Korte alleges that, during the relevant weeks, he
was performing primarily non-exempt functions: "I was not able to
submit said certification [that I had spent more than 50% of my

1  work time on exempt duties] on many, if not most weeks, while I was

2  a Store Manager (2007-2011), because I was doing primarily non-

3  exempt duties." (Korte Decl. ¶ 28.) This statement satisfies

4  Korte's burden as to the quantitative factor under the exemption,

5  *i.e.*, that there were weeks in which he spent more than 50% of his

6  time doing non-exempt work.

7      What remains is the inquiry prescribed by the California

8  Supreme Court as to "whether the employee's practice diverges from

9  the employer's realistic expectations, whether there was any

10 concrete expression of employer displeasure over an employee's

11 substandard performance, and whether these expressions were

12 themselves realistic given the actual overall requirements of the

13 job." <u>Ramirez</u>, 20 Cal. 4th at 802.

14     Korte disputes Dollar Tree's contention that he spent more

15 than 50 percent of his time on non-exempt functions because he

16 failed to meet the company's realistic expectations for job

17 performance. He argues that "Dollar Tree management's displeasure

18 with [his] non compliance was not realistic, given the fact [that

19 he] had informed them on multiple occasions of his need for a

20 Freight Manager in order to comply." (Plaintiff's Points and

21 Authorities in Opposition to Defendant's Motion for Summary

22 Judgment ("Opposition") 5:6-8.) In support, he cites paragraph 18,

23 28, and 29 of his declaration, which are largely reproduced above

24 under the heading "Korte's evidence." But these paragraphs are

25 insufficient to rebut Dollar Tree and create a genuine issue of

26 material fact, as they fail to explain why Korte did not simply

16

1  train one of his Assistant Store Managers to be a Freight Manager,

2  as Dollar Tree directed.

3       Nonetheless, Korte's deposition transcript, relied upon by

4  Dollar Tree, contains the following exchange. The highlighted

5  passages are those cited by Dollar Tree in support of its motion:

6       Q.   [T]he instruction from Dollar Tree[,] from Melissa
            Ruzylo, your superior, was to train one of your
7            existing assistant store managers to be the freight
            manager, correct?

8       A.   Yes. And I asked her--

9       Q.   And you resisted that because you didn't think it
10           was possible?

11      A.   No, I did not resist it. I asked her to transfer
            one of those people out and transfer somebody else
12           in that I could make a freight manager.

13      Q.   You said, "I don't think I can make any of these
            freight managers," correct? You resisted that
14           direction. Your judgment was they couldn't be
            freight managers?

15
        A.   My judgment was correct.
16      (Deposition of Eugene Korte 179:24-180:13, ECF No. 33-6.)

17  While it is undisputed that Korte "was instructed to train one of

18  his [Assistant Store Managers] to be the Freight Manager" (DUSF

19  45), here, Korte is claiming that these expectations were

20  unrealistic because, in his judgment, the Assistant Store Managers

21  under his supervision could not fulfill the Freight Manager

22  function. Arguably, his assertion gives rise to a genuine issue of

23  material fact, *i.e.*, whether, in directing Korte to train one of

24  his assistant store managers to perform the freight manager

25  function, Dollar Tree's expectations were "realistic given the

26  actual overall requirements of the job." Ramirez, 20 Cal. 4th at

17

802.  Korte  was  of  the  view  that  these  expectations  were  not
realistic  given  his  staff's  capabilities.  Korte's  deposition
testimony  therefore  provides  "sufficient  evidence  supporting  the
claimed  factual  dispute  .  .  .  to  require  a  judge  or  jury  to  resolve
the  parties'  differing  versions  of  the  truth  at  trial."  T.W. Elec.
Serv., 809 F.2d at 630.  Accordingly,  summary  judgment  must  be
denied  as  to  whether  Korte  was  exempt  from  California's  overtime
laws.

Dollar  Tree  has  also  moved  for  summary  judgment  on  Korte's
claims  for  violations  of  California's  meal  period,  rest  break,
itemized  wage  statement,  and  waiting  time  statutes,  on  the  grounds
that  his  exempt  status  moots  these  claims.  As  Korte  has
demonstrated  that  a  genuine  dispute  exists  as  to  whether  he  fell
under  the  executive  exemption,  the  court  must  deny  Dollar  Tree
summary  judgment  on  these  claims  as  well.

**2. Can Korte make out a claim for retaliation?**

Korte  contends  that  Dollar  Tree  terminated  him  in  retaliation
for  his  filing  of  certifications  showing  that  he  spent  a  majority
of  his  time  on  non-exempt  functions,  and  for  his  communications
with  his  superiors  regarding  this  fact.  Korte  argues  that,  by
simultaneously  directing  him  to  spend  the  majority  of  his  time  on
exempt  activities,  while  failing  to  provide  him  with  the  staff
necessary  to  achieve  this  goal,  Dollar  Tree  implicitly  encouraged
him  to  lie  about  his  duties  on  his  weekly  certifications,  and
thereby  participated  in  a  violation  of  state  wage  and  hour  law.
(Opposition 7:2-22.)

1    Korte's retaliation claims are brought under the First

2 Amendment, as well as under Cal. Lab. Code §§ 98.6 and 1102.5.[4]

3 Dollar Tree is granted partial summary judgment on the First

4 Amendment claim, as Korte concedes this point. (Opposition 3:9-10.)

5    Dollar Tree raises two lines of defense to Korte's Labor Code

6 claims. First, it contends that they are barred for failure to

7 exhaust administrative remedies, and second, that they are not

8 cognizable under either Labor Code provision cited. Suffice it to

9 say that there is no binding precedent on these questions, and

10 courts remain sharply divided on all of them.[5]

11 _____

12    [4] In his Opposition, Korte argues, in passing, that his
retaliation claim is also actionable as a violation of California's
public policy, citing <u>Rojo v. Kliger</u>, 52 Cal. 3d 65 (1990)
13 (granting leave to amend to plead a cause of action for wrongful
discharge in violation of public policy). However, Korte has failed
14 to plead this cause of action in his complaint. Having previously
granted him leave to amend (ECF No. 18), the court declines to do
15 so again.

16    [5] For opinions holding that plaintiffs need not exhaust
administrative remedies before suing under the California Labor
17 Code, <u>see</u> <u>Creighton v. City of Livingston</u>, No. CV-F-08-1507-OWW-
SMS, 2009 WL 3246825, 2009 U.S. Dist. LEXIS 93720 (E.D. Cal. Oct.
18 7, 2009) (Wanger, J.) ("Exhaustion of administrative remedies
before the Labor Commissioner before filing suit for statutory
19 violations of the Labor Code is not required under California
law"); <u>Turner v. San Francisco</u>, 892 F. Supp. 2d 1188, 1202 (N.D.
20 Cal. 2012) (Chen, J.) ("The Court finds that exhaustion under
§ 98.7 is not required before bringing a civil action under §§ 98.6
21 and 1102.5"). For opinions holding otherwise, <u>see</u> <u>Dolis v. Bleum
USA, Inc.</u>, No. 11-CV-2713-TEH, 2011 WL 4501979, 2011 U.S. Dist.
22 LEXIS 110575 (N.D. Cal. Sep. 28, 2011) (Henderson, J.) (barring
§ 1102.5(c) claim for failure to exhaust administrative remedies
23 with the Labor Commissioner); <u>Ferretti v. Pfizer Inc.</u>, 855 F. Supp.
2d 1017, 1024 (N.D. Cal. 2012) (Koh, J.) (same).
24    For opinions holding that the California Labor Code does not
provide a right of action to employees who allege retaliation after
25 complaining to their private-sector employers, <u>see</u> <u>Hollie v.
Concentra Health Servs., Inc.</u>, No. C 10-5197-PJH, 2012 WL 993522,
26 2012 U.S. Dist. LEXIS 40203 (N.D. Cal. Mar. 23, 2012) (Hamilton,

1    Nevertheless, even if Korte can clear these hurdles, Dollar
2    Tree must still be granted summary judgment on the retaliation
3    claims.

4        In addressing claims of employer retaliation, California
5    courts apply the burden-shifting approach articulated by the U.S.
6    Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792,
7    802 (1973). In order to establish a prima facie case, the plaintiff
8    employee must demonstrate that: 1) the employee engaged in
9    protected activity; 2) the employer subjected the employee to an
10   adverse employment action; and 3) there was a causal link between
11   the protected activity and the adverse employment action. Muniz v.
12   United Parcel Service, Inc., 731 F. Supp. 2d 961, 969 (N.D. Cal.
13   2010) (Wilken, J.). Once the plaintiff has established a prima
14   facie case, the defendant employer is required to offer a
15   legitimate, non-discriminatory reason for the adverse employment
16   action. Patten v. Grant Joint Union High School Dist., 134 Cal.
17   App. 4th 1378, 1384 (2005). The burden then shifts back to the
18   plaintiff to show that the explanation given by the employer for
19   the adverse employment action is "mere pretext." Id.

20   _____

21   J.) ("[T]he court finds as a matter of law that neither the
     verbal/e-mail protests, nor the protests 'by conduct,' were
22   activities protected under § 98.6"); Weingand v. Harland Fin.
     Solutions, No. C-11-3109-EMC, 2012 WL 3537035, 2012 U.S. Dist.
23   LEXIS 114651 (N.D. Cal. Aug. 14, 2012) (Chen, J.) (dismissing
     § 98.6 retaliation claim where "[p]laintiff merely allege[d] that
24   he complained of his employer's conduct within the company
     itself"). For an opinion holding otherwise, see Muniz v. United
25   Parcel Serv., Inc., 731 F. Supp. 2d 961, 970 (N.D. Cal. 2010)
     (Wilken, J.) (holding that refusal to accede to employer's alleged
26   practice of hiding wage-and-hour violations could give rise to a
     claim under § 98.6).

1    The critical factor, in the court's view, is whether Korte can
2  make out a prima facie case for causation. The record does not
3  reveal any direct evidence of a causal link between Korte's failure
4  to certify that he was spending the majority of his time on exempt
5  tasks, and his subsequent termination. And while causation may be
6  inferred from temporal proximity, "[t]he cases that accept mere
7  temporal proximity between an employer's knowledge of protected
8  activity and an adverse employment action as sufficient evidence of
9  causality to establish a prima facie case uniformly hold that the
10 temporal proximity must be 'very close.'" Clark County School Dist.
11 v. Breeden, 532 U.S. 268, 273 (2001).

12    What the record demonstrates is that Korte spent years filing
13 certifications of his non-exempt status and discussing the issue
14 with management, all without being subjected to adverse action. His
15 declaration provides, "I was not able to submit said certification
16 on many, if not most weeks, while I was a Store Manager (2007-
17 2011), because I was doing primarily non-exempt duties. . . [F]or
18 much of the relevant period, up to the time of my termination in
19 April 2011, I did not have a freight manager and thus was required
20 to do the freight duties at my store." (Korte Decl. ¶ 28.) While he
21 communicated with numerous superiors regarding the certification
22 issue, there is no evidence that, as April 2011 approached, these
23 communications grew more frequent or that he was given warnings of
24 any kind. Rather, matters seem to have continued apace.[6]

25

26    [6] For example, Dollar Tree has submitted Korte's performance
   evaluation for 2009/2010. Korte received the following comments in

1  Accordingly, the court cannot infer causation based on temporal
2  proximity.

3      What did change in April 2011 was that Dollar Tree entered
4  into a monetary settlement with a former employee whom Korte was
5  alleged to have harassed and who had filed a DFEH complaint about
6  his behavior. Korte had been the subject of sexual harassment
7  complaints for going on nine years, but it appears that this was
8  the first time the company incurred any financial liability as a
9  result of his conduct. Korte was terminated that same month.
10 Korte's termination appears causally linked to this incident,
11 rather than to the certifications he had been filing for four
12 years.

13     As Dollar Tree has shown "an absence of evidence to support
14 [Korte's] case" for retaliatory termination, based on lack of
15 evidence of causation, the burden now shifts to Korte to "designate
16 specific facts demonstrating the existence of genuine issues for
17 trial." <u>Oracle Corp.</u>, 627 F.3d at 387. This he fails to do. While

---

18

19 the area of Personnel Management:

> [Korte] currently has 3 [Assistant Store Managers] under
20 > his management, yet he has not trained any of the three
> to be a Merchandise Manager. Instead of doing so, he
21 > continues to manage the freight processing procedures
> himself. To alleviate undo [ *sic*] pressure to conduct
> Store Manager functions in conjunction with the freight
22 > processing, I would like to see [Korte] give ownership
> of the Merchandise Manager to one of his ASM's and train
23 > them appropriately. (Exhibit I to Declaration of David
> McDearmon in Support of Motion for Summary Judgment, ECF
24 > No. 33-3.)

25 The signatures of Korte's managers on this document are dated June
7, 2010. The court cannot infer causation from a subjunctive
26 statement ("I would like to see...") made some ten months before
Korte's termination.

22

1  Korte argues that he was suspended and then terminated for
2  retaliatory reasons, he has not introduced a single fact to support
3  that position. He does allege that the DFEH sexual harassment
4  complaint had "no merit," that he "was informed, by Dollar Tree
5  management and counsel, that they also felt [the] claims to be
6  without merit," and that the matter "was ultimately settled for
7  what was termed by Dollar Tree management and counsel as 'nuisance
8  value.'" (Korte Decl. ¶ 23.) But none of this demonstrates that his
9  termination was the result of repeatedly certifying that the
10 majority of his work hours were spent on non-exempt functions. His
11 statement that "I believe that Dollar Tree terminated me because I
12 would not 'certify' that I was performing exempt functions for over
13 50% of my work day" (id.) is conclusory and has no evidentiary
14 weight. Nor can the court infer that Korte suffered a retaliatory
15 termination, for Korte has failed to produce a factual predicate on
16 which to base for such an inference. See Richards, 810 F.2d at 902.

17     In short, the record, taken as a whole, could not "lead a
18 rational trier of fact to find for" Korte. Matsushita, 475 U.S. at
19 586-87. Summary judgment will therefore be entered for Dollar Tree
20 on the retaliation claim.

21          **3. Can Korte seek punitive damages in this lawsuit?**

22     Partial summary judgment must also be entered on Korte's
23 prayer for punitive damages, as the prayer is derivative of his
24 retaliation claim. (First Amended Complaint 8, ECF No. 19.)

25          **4. Has Korte made out a claim for age discrimination?**

26     Korte contends that Dollar Tree unlawfully terminated him due

1   to his age. The California Fair Employment and Housing Act ("FEHA")

2   outlaws employment discrimination against individuals over forty.

3   Cal. Gov't Code §§ 12926(b), 12940. "California has adopted the

4   three-stage [McDonnell Douglas] burden-shifting test established by

5   the United States Supreme Court for trying claims of

6   discrimination, including age discrimination, based on a theory of

7   disparate treatment." Guz v. Bechtel National, Inc., 24 Cal. 4th

8   317, 354 (2000). Under this test:

9       A plaintiff must first establish a prima facie case of
        discrimination. If the plaintiff establishes a prima
10      facie case, the burden then shifts to the defendant to
        articulate a legitimate non-discriminatory reason for its
11      employment decision. Then, in order to prevail, the
        plaintiff must demonstrate that the employer's alleged
12      reason for the adverse employment decision is a pretext
        for a discriminatory motive.

13

14  Llamas v. Butte Cmty. Coll. Dist., 238 F.3d 1123, 1126 (9th Cir.

15  2001).

16      At trial, Korte would bear the burden of proof to show age

17  discrimination. Accordingly, at summary judgment, Dollar Tree "need

18  only prove that there is an absence of evidence to support [Korte's

19  claim]." Oracle Corp., 627 F.3d at 387. To achieve this, Dollar

20  Tree may show "either that (1) plaintiff could not establish one of

21  the elements of the FEHA claim or (2) there was a legitimate,

22  nondiscriminatory reason for its decision to terminate plaintiff's

23  employment." Dep't of Fair Emp't and Hous. v. Lucent Technologies,

24  642 F.3d 728, 745 (9th Cir. 2011) (internal citations and brackets

25  omitted).

26      To prove his FEHA claim, Korte must demonstrate that (1) he

                                    24

1  suffered an adverse employment action, such as termination; (2) at

2  the time of the adverse action, he was over the age of 40; (3) at

3  such time, he was performing his job competently; and (4) some

4  other circumstance suggests discriminatory motive. See Guz, 24

5  Cal. 4th at 355. "While the plaintiff's prima facie burden is not

6  onerous, he must at least show actions taken by the employer from

7  which one can infer, if such actions remain unexplained, that it is

8  more likely than not that such actions were based on a prohibited

9  discriminatory criterion." Id. (internal citations and quotations

10 omitted).

11     There appears little question that the first two elements are

12 satisfied: Korte was terminated on April 18, 2011, at the age of

13 58. (DUSF 83.)

14     Korte next claims that he was performing his job competently

15 at the time he was terminated. His declaration provides:

16         I always performed my job duties in an exemplary manner.
           This is confirmed in my evaluations which were always
17         between "meets expectations" and "exceeds expectations."
           I did not receive any evaluations which were "below
18         expectations" and/or "needs improvement." This was true
           even in those years when a sexual harassment claim had
19         been made. (Korte Decl. ¶ 30.)

20 On this basis, he argues that "[t]here are no facts which indicate

21 that Korte did not perform his job function adequately or that

22 Dollar Tree did not consider Korte to be performing his job

23 function adequately." (Opposition 5.)

24     Dollar Tree's evidentiary objections to Korte's statement are

25 not well taken. It is true that, taken alone, the assertion "I

26 always performed my job duties in an exemplary manner" would be

1   conclusory   and   therefore   insufficient   to   support   Korte's
2   opposition. <u>Angel v. Seattle-First Nat. Bank</u>, 653 F.2d 1293, 1299.
3   But Korte bases his assertion (writing "This is confirmed...") on
4   the   statements   in   his   evaluations;   these   statements   are   non-
5   hearsay, as they were both made by and offered against Dollar Tree.
6   Fed. R. Evid. 801(d)(2). Dollar Tree's objection on best evidence
7   rule grounds, Fed. R. Evid. 1002, also fails because "an event may
8   be   proved   by   nondocumentary   evidence"   -   in   this   case,   Korte's
9   perceptions   –   "even   though   a   written   record   of   it   was   made."
10  Advisory Committee's Notes on Fed. R. Evid. 1002 (1972). Finally,
11  Korte's   statement   is   relevant,   as   it   makes   his   assertion   of
12  competence more probably than it would otherwise be, and competence
13  is a necessary element of his prima facie case under FEHA.

14      The question then becomes whether Korte can be said to have
15  made out a prima facie case that he was performing his job duties
16  competently   when   he   was   terminated,   given   that   he   had   been
17  repeatedly   disciplined   for   violations   of   Dollar   Tree's   sexual
18  harassment policy, and, according to Dollar Tree, he was terminated
19  over the final incident of harassment.

20      Let us assume, *arguendo,* that Korte has made out a prima facie
21  case on this element.

22      Nevertheless, he cannot establish the final element of his
23  case, that some other circumstance suggests he was discriminated
24  against based on his age.

25      In his declaration, Korte identifies the following statements
26  made by Dollar Tree   management   that   he   claims   demonstrate   bias

26

against older workers:

> a. Regional Director Cindy Ray, referring to a Dollar Tree employee, stated he was "old thinking" with "old habits" and was "too old, too stupid and missed too much time."
>
> b. District Manager Paul Massey stated, in 2007, regarding 2 store managers, Connie Vischer and Jerry Littell, that they had "been around forever", that they were old and too stupid to run the business and needed to go.
>
> c. Market Manager Carlos Hernandez said concerning Jerry Littell in December 2010, "why can't people get this done...Are they too stupid or too old to comply?"
>
> d. Regional Director Matt Rodriguez said of employee Jim Wackford that Wackford had to go as he was "too old and stupid" to change his ways.
>
> e. Zone Manager Jim Dunaway said of Wackford that he was "too old school" and "not going to change."
>
> f. Regional Manager Rodriguez said of District Manager Spuinuzzi that he had "a 99 cent store mentality", that he was "too old and stupid to change to the ways of Dollar Tree."
>
> g. Market Manager Hernandez said of Store Manager Connie Vischer that she would not be returning to her earlier training duties and would be "better off just retiring." (Korte Decl. ¶ 38.)

In the context of employment discrimination suits, such statements are termed "stray remarks," *i.e.*, "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decision process itself." <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 277 (1989). Under federal antidiscrimination law, such remarks are largely deemed irrelevant, and their assertion is insufficient to withstand summary judgment. <u>Reid v. Google, Inc.</u>, 50 Cal. 4th 512, 536-7 (2010) (summarizing cases). California, by contrast, takes a "totality of the circumstances" approach to stray remarks: in

evaluating FEHA claims, courts should consider stray remarks along with all of the other evidence in the record to determine whether the remarks "create an ensemble that is sufficient to defeat summary judgment." Id. at 539, 541, 542 (internal quotation and citation omitted). For example, in Reid, an age discrimination case, the plaintiff survived summary judgment because his evidence of stray remarks was accompanied by incriminating emails, statistical evidence of discrimination by the employer, the plaintiff's demotion to a nonviable position before termination, and evidence of changed rationales by the employer for the plaintiff's termination. Id. at 545. Moreover, many of the stray remarks in Reid concerned the plaintiff personally. Id. at 536.

By contrast, Korte has nothing beyond the stray remarks (none of which concern him) to buttress his allegations of age discrimination. His only other allegation concerning age discrimination reads, "I do not believe th[e] Gaines complaint had anything to do with my termination. I believe I was terminated because of my age." (Korte Decl. ¶ 23). This statement is conclusory and lacks any evidentiary foundation. Korte provides no evidence to demonstrate that age played a role in his termination other than the stray remarks listed above. As such, his statement is inadmissible under Fed. R. Evid. 602.

Korte does argue that "[t]he [Gaines] matter was ultimately settled for what was termed by Dollar Tree management and counsel as 'nuisance value'" and "[n]o one from Dollar Tree ever told me that they believed Ms. Gaines [sic] claims to be credible and/or

28

with merit," (Korte Decl. ¶ 23). Nonetheless, he proffers no evidence "from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion." Guz, 24 Cal. 4th at 355.

In sum, even when considered with the other evidence presented by Korte, the stray remarks he documents are insufficient to make out a prima facie case that age discrimination played a role in his termination.

Accordingly, Dollar Tree is granted partial summary judgment on Korte's claim of age discrimination under FEHA.

**D. Request to Seal**

Pursuant to Local Rule 141, Dollar Tree requests that the court seal more than two dozen documents filed in support of this motion. (Notice of Request to Seal, ECF No. 32.) It also moves to seal two lines in its Memorandum of Points and Authorities, two undisputed facts, and two paragraphs of a supporting declaration. (Id.)

Korte does not oppose the sealing request. Nevertheless, Dollar Tree bears the burden of demonstrating that the requested sealing order should issue.

**1. Standard re: Sealing of Records**

Courts have long recognized a "general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally

1  kept secret,' a 'strong presumption in favor of access' is the

2  starting point." <u>Kamakana v. City and Cnty. of Honolulu</u>, 447 F.3d

3  1172, 1178 (9th Cir. 2006) (quoting <u>Foltz v. State Farm Mut. Auto.</u>

4  <u>Ins. Co.</u>, 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to

5  overcome this strong presumption, a party seeking to seal a

6  judicial record must articulate justifications for sealing that

7  outweigh the historical right of access and the public policies

8  favoring disclosure. <u>See</u> <u>id.</u> at 1178-79.

9       The Ninth Circuit has determined that the public's interest in

10 non-dispositive motions is relatively lower than its interest in

11 trial or a dispositive motion. Accordingly, a party seeking to seal

12 a document attached to a non-dispositive motion need only

13 demonstrate "good cause" to justify sealing. <u>Pintos v. Pac.</u>

14 <u>Creditors Ass'n</u>, 605 F.3d 665, 678 (9th Cir. 2010) (applying "good

15 cause" standard to all non-dispositive motions because such motions

16 "are often unrelated, or only tangentially related, to the

17 underlying cause of action") (internal quotation marks and citation

18 omitted).

19      Conversely, "the resolution of a dispute on the merits,

20 whether by trial or summary judgment, is at the heart of the

21 interest in ensuring the 'public's understanding of the judicial

22 process and of significant public events.'" <u>Kamakana</u>, 447 F.3d at

23 1179 (quoting <u>Valley Broad. Co. v. U.S. Dist. Court for Dist. of</u>

24 <u>Nev.</u>, 798 F.2d 1289, 1294 (9th Cir. 1986)). Accordingly, a party

25 seeking to seal a judicial record attached to a dispositive motion

26 or one that is presented at trial must articulate "compelling

reasons" in favor of sealing. See id. at 1178. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." Id. at 1179 (citing Foltz, 331 F.3d at 1136). "In general, 'compelling reasons' . . . exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." Id. (citing Nixon, 435 U.S. at 598).

Under the "compelling reasons" standard, a district court must weigh "relevant factors," base its decision "on a compelling reason," and "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." Pintos, 605 F.3d at 679 (quoting Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995)). "[S]ources of business information that might harm a litigant's competitive standing" often warrant protection under seal. Nixon, 435 U.S. at 598. But "the party seeking protection bears the burden of showing specific prejudice or harm will result if no [protection] is granted." Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002). Consequently, that party must make a "particularized showing of good cause with respect to any individual document." San Jose Mercury News, Inc. v. U.S. Dist. Court, N. Dist. (San Jose), 187 F.3d 1096, 1103 (9th Cir. 1999). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992)

1   (quoting <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d 1108, 1121 (3rd

2   Cir. 1986)).

3                **2. Dollar Tree's boilerplate justifications for sealing**

4         With respect to most of the documents and information it seeks

5   to seal, Dollar Tree has completely failed to make any "showing

6   [of] specific prejudice or harm," <u>Phillips</u>, 307 F.3d at 1210-11, or

7   a "particularized showing of good cause," <u>San Jose Mercury News</u>,

8   187 F.3d at 1103.

9         Much of Dollar Tree's Request to Seal repeats the following

10  boilerplate:

11          [The document] . . . contains confidential and
            proprietary information regarding Dollar Tree's
12          [BOILERPLATE 1]. In the highly competitive retail
            industry, the confidentiality of information that relates
13          to Dollar Tree's [BOILERPLATE 2] is critical to maximize
            the company's competitive advantage. Disclosure of such
14          information would be detrimental to Dollar Tree's
            financial and competitive interests. Cal. Civ. Code §§
15          3426.1; 3426.5.[7] Dollar Tree's request to seal these
            exhibits is narrowly tailored given that the exhibit
16          cannot be redacted in a meaningful way, and no less
            restrictive means exist to achieve the overriding
17          interest in protecting the confidentiality of the
            information.

18  In place of [BOLERPLATE 1], Dollar Tree uses one or more of the

19  following phrases: "business model"; "human resources policies";

20  "human resources practices"; "operational policies"; "operational

21  procedures"; "ordering processes"; "pay practices"; and "store

22  budgets." In place of [BOILERPLATE 2], Dollar Tree deploys one or

23

24          [7] Cal. Civ. Code § 3426.1 defines various terms, including
     "trade secret," under California's implementation of the Uniform
25   Trade Secrets Act. Cal. Civ. Code § 3426.5 directs courts to
     "preserve the secrecy of an alleged trade secret by reasonable
26   means . . . ."

                                    32

more of the following phrases: "compensation structure"; "human resources policies"; "human resources practices"; "operational procedures"; "proprietary business model"; and "proprietary operational procedures." (The supporting Declaration of Lisa K. Horgan is similarly robotic.) As a result, the court determines that defendant has failed to articulate a factual basis for sealing the requested documents unless the court relies on hypothesis or conjecture – which it declines to do. <u>Pintos</u>, 605 F.3d at 679

As a result, the court finds that Dollar Tree has simply failed to demonstrate a compelling reason to seal the following: Exhibits A, B, C, D, E, F, G, H, I, J, and L to the Declaration of David McDearmon in Support of Motion for Summary Judgment ("McDearmon Declaration"), ECF No. 33-3), Exhibits D, O, P, Q, R, U, V, and W to the Declaration of Maureen McClain in Support of Motion for Summary Judgment ("McClain Declaration"), ECF No. 33-6), and paragraphs 5 & 6 of the Declaration of Jeff Whitemore in Support of Motion for Summary Judgment ("Whitemore Declaration"), ECF No. 33-4).

Dollar Tree also seeks to justify redaction (rather than wholesale sealing) of certain documents using nearly identical boilerplate. Accordingly, the court finds that Dollar Tree has failed to demonstrate good cause for redacting the following: Exhibits L, M, N to the McClain Decl., lines 5:26 and 17:27-18:1 of the Memorandum of Points and Authorities in Support of Motion for Summary Judgment (ECF No. 33), and undisputed facts nos. 50 & 51 (ECF No. 34).

### 3. Third-party employees' personal information

What remains are documents that, to one degree or another, contain information identifying individuals who are not parties to this lawsuit. Some of this is personal information (such as names, dates of birth, and signatures) that obviously increases individuals' risk of identity theft; sealing or redaction is obviously warranted, as this information has no relevance to the outcome of this lawsuit. Many other documents concern Dollar Tree employees' allegations of sexual harassment. This information is obviously relevant to a number of Dollar Tree's defenses, which weighs in favor of unsealing; yet the court is also sensitive to the fact that employees who report sexual harassment in the workplace (in and of itself a courageous act, in the court's view), yet do not commence legal proceedings, surely do not intend their complaints to become public knowledge. With these considerations in mind, each of the documents Dollar Tree seeks to seal are now considered in turn.

Exhibit A to the Declaration of Candace Camp in Support of Motion for Summary Judgment ("Camp Declaration", ECF No. 33-2) consists of emails that include some discussion of an employee's medical conditions. Dollar Tree seeks to seal the entire exhibit, on the grounds that "[t]he individual's circumstances are discussed in detail, making it easy to identify the individual even if the name is redacted." This concern for the employee's privacy rights is warranted. However, portions of the email are relevant to Korte's contention that he could not train his employees to perform

34

certain non-exempt functions. An appropriate compromise is redaction of the employee's name, the dates of the employee's medical appointments, and the two medical conditions referenced.

Exhibits B, D, and E to the Camp Declaration contain handwritten notes about employees' complaints regarding Korte's alleged sexual harassment. Exhibits C and F to the Camp Declaration are statements made by employees about their interactions with Korte. While Dollar Tree seeks to seal these exhibits in their entirety, the court finds that this solution is overbroad, given that there appears to be no personal identifying information about the employees beyond their names, and in one instance, in Exhibit B, an employee's phone number. Accordingly, these exhibits should be filed with employees' names (other than Korte's) and any phone numbers redacted.

Exhibit A to the Whitemore Declaration contains twenty-four employees' names, dates of hire, dates of birth, store assignments, and titles. Dollar Tree seeks to seal this exhibit in its entirety. Sealing, rather than redaction, appears appropriate, for if all identifying information were redacted, this document would convey virtually no information to the reader.

Exhibits H and I to the McClain Declaration are sign-in sheets from Dollar Tree's District Manager and Store Manager Sexual Harassment Trainings. This document may be filed with all employees' names and signatures, other than Korte's, redacted.

Exhibit K to the McClain Declaration is a statement by an employee detailing Korte's alleged sexual harassment of her. It

1   contains numerous identifying details about the employee, and as

2   such, may be filed under seal.

3        Exhibit S to the McClain Declaration is an employee's

4   performance review, and Exhibit T thereto is an email discussing an

5   employee's management training. In each instance, Dollar Tree seeks

6   only to redact the individual employee's name. Such redaction is

7   narrowly-tailored and appropriate under the circumstances.

8        Note that if, during future proceedings herein, either party

9   introduces the redacted or sealed information into evidence, the

10  court is likely to revisit this order and direct that the relevant

11  records be filed in unredacted or unsealed form.

12  **IV. CONCLUSION**

13       The court orders as follows:

14       [1] Defendant's motion for summary judgment is DENIED.

15

16       [2] Defendant's motion for partial summary judgment is DENIED

17       as to plaintiff's claims for overtime compensation,

18       compensation for meal and rest breaks, failure to provide

19       itemized wage statements, and waiting time penalties.

20

21       [3] Defendant's motion for partial summary judgment is GRANTED

22       as to plaintiff's claims for retaliation under the First

23       Amendment, retaliation under Cal. Lab. Code §§ 98.6 and

24       1102.5, age discrimination under the California Fair

25       Employment and Housing Act, and as to plaintiff's prayer for

26       punitive damages.

1    [4] Defendants are DIRECTED to file Exhibits A-F to the Camp

2    Declaration, and Exhibits H, I, S, and T to the McClain

3    Declaration, each redacted according to the instructions

4    above, no more than seven (7) days after entry of this order.

5

6    [5] Defendants are DIRECTED to file under seal Exhibit A to

7    the Whitemore Declaration and Exhibit K to the McClain

8    Declaration no more than seven (7) days after entry of this

9    order.

10

11   [6] As to all other documents that defendant sought to file

12   under seal or in redacted form, defendant's request is DENIED.

13   Defendant is to file unsealed and unreadacted versions of

14   these documents no more than seven (7) days after entry of

15   this order.

16   IT IS SO ORDERED.

17   DATED:   June 11, 2013.

18

19

20                          _____

21                          LAWRENCE K. KARLTON
                            SENIOR JUDGE
22                          UNITED STATES DISTRICT COURT

23

24

25

26

37