1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  EUGENE KORTE,
                                        NO. CIV. S-12-541 LKK/EFB
11          Plaintiff,

12      v.

13  DOLLAR TREE STORES, INC.,                    O R D E R

14          Defendant.

15  _____/

16      Plaintiff Eugene Korte sues defendant Dollar Tree Stores,

17  Inc., alleging: (i) failure to comply with wage and hour laws,

18  (ii) failure to provide proper wage statements, (iii) failure to

19  pay wages due at termination, (iv) retaliatory termination, and

20  (v) age discrimination. The first four causes of action are pled

21  under the California Labor Code; the fifth under California's Fair

22  Employment and Housing Act. According to Dollar Tree, Korte "is a

23  discharged member of a decertified class of current and former

24  Dollar Tree employees who worked as Store Managers at California

25  retail store locations between 12/24/2004 and 5/26/2009 and who

26  raised    wage    and    hour    claims    challenging    their    exempt

                                  1

classification."[1] (Notice of Removal, ECF No. 1, at 1.)

Korte filed suit in Sacramento County Superior Court on December 8, 2011. The case was removed to this court on February 29, 2012. Dollar Tree now moves for summary judgment, or in the alternative, partial summary judgment.

The motion came on for hearing on May 28, 2013. For the reasons set forth below, the court will grant Dollar Tree partial summary judgment as to certain of Korte's claims.

**I. FACTS**

The following facts are undisputed or sufficiently uncontroverted.

Korte began working for Dollar Tree in 1999. (Defendant's Statement of Undisputed Facts ("DSUF") 4, ECF No. 34.) From May 10, 2007 until his termination in April 2011, Korte was the Store Manager and/or the Z Manager[2] of at least four different Dollar Tree stores in the Sacramento region. (DSUF 5; Plaintiff's Response to Defendant's Statement of Undisputed Facts ("PR-DSUF") 5, ECF No. 39.) Store Managers, in turn, are supervised by District Managers. (DSUF 1, 2.) Dollar Tree classifies Store Managers and District Managers as exempt from overtime compensation, while

---

[1] The decertification order is available at <u>Cruz v. Dollar Tree Stores, Inc.</u>, Nos. 07-2050/07-4012, 2011 WL 2682967, 2011 U.S. Dist. LEXIS 73938 (N.D. Cal. Jul. 8, 2011) (Conti, J.).

[2] A Z Manager is a Store Manager without a store assignment. (DSUF 4.) The parties do not discuss the differences between these two positions in any detail, and the differences do not appear material to this motion; accordingly, the remainder of this order will simply describe Korte's position with Dollar Tree during the 2007 - 2011 period as "Store Manager."

1  Assistant Store Managers and all other retail store employees
2  (termed "Associates," most of whom work part-time schedules) are
3  classified as non-exempt. (DSUF 3.)

4      A Store Manager is the highest-level manager at each Dollar
5  Tree location. (DSUF 6.) Korte's duties as Store Manager included
6  recruiting, hiring, supervising, evaluating, and disciplining
7  employees; planning staffing and work schedules; ordering
8  merchandise; deciding how to display merchandise (within company
9  guidelines); and training future Store Managers. (DSUF 9-12, 19-20,
10 25, 28, 34, 40; PR-DSUF 40.) Although he was in charge of his store
11 location, Korte could not make certain decisions, such as adding
12 hours to employees' schedules or discharging employees, without
13 authorization by the District Manager and/or Dollar Tree's Human
14 Resources department. (DSUF 7, 12, 27; PR-DSUF 12, 27.)

15     Dollar Tree expected Store Managers to spend the majority of
16 their time on management tasks and to delegate non-management
17 tasks. (DSUF 43, 44.) This expectation was communicated to Store
18 Managers in various ways, including performance evaluations, a
19 Store Manager job description, and various documents setting forth
20 company policies and procedures. (DSUF 44.) Korte was aware of
21 Dollar Tree's expectation as to how he should structure his time.
22 (DSUF 43.)

23     Store Managers were to submit electronic certifications each
24 week confirming that they had spent at least 50% of their time on
25 exempt tasks. (DSUF 96.) If a Store Manager was unable to make this
26 certification, (s)he was required to set out the reasons why (s)he

3

1  could not do so. (Id.) Korte acknowledges that Dollar Tree never

2  suggested that he should be anything but truthful in filling out

3  the certifications, and he maintains that he was truthful in

4  completing them. (DSUF 98-100.)

5      Dollar Tree maintains a formal non-discrimination and non-

6  harassment policy ("Policy"). (DSUF 52.) The Policy forbids

7  discrimination and/or harassment on the basis of sex, race, sexual

8  orientation, pregnancy, religion, national origin, age, disability,

9  and any other status protected by law. (DSUF 53.) The Policy

10 specifically prohibits "verbal comments about an individual's body"

11 and "unwelcome physical behavior such as . . . touching." (DSUF

12 54.) The Policy is found in an employee handbook, which Korte

13 distributed to new employees. (DSUF 52, 55.) Korte also attended at

14 least three company trainings on sexual harassment. (DSUF 61.)

15 Korte understood that the Policy prohibited discrimination and

16 sexual harassment, and that as Store Manager, he was obliged to

17 enforce the Policy. (DSUF 58.)

18     In 2002, Dollar Tree received reports that Korte had

19 inappropriately touched female employees, including putting an arm

20 around a female associate's shoulders and pulling her towards him

21 to talk to her, as well as pinching another female associate on the

22 arm. Dollar Tree also received a report that Korte had commented on

23 the placement of keys on a necklace in relation to a female

24 employee's breasts. Korte was disciplined by Dollar Tree for this

25 inappropriate behavior. (DSUF 62.) He was also directed to review

26 Dollar Tree's sexual harassment policy and given a written warning

1  that further sexual harassment complaints would result in
2  disciplinary action, up to and including termination. (DSUF 64.)

3      In August and September 2007, shortly after Korte became Store
4  Manager in Roseville, California, Dollar Tree received reports from
5  several of his female subordinates that he had made inappropriate
6  remarks about their bodies, pinched one female associate's waist,
7  run his finger down the side of another female associate's neck,
8  and touched a third female associate's elbow. (DSUF 67.) After the
9  complaints were investigated by Dollar Tree's Regional Human
10 Resources Manager, Korte's District Manager warned Korte regarding
11 his inappropriate behavior. He was transferred to another store.
12 (DSUF 69.)

13     In June 2009, Dollar Tree again received a complaint from a
14 female employee regarding inappropriate behavior by Korte. (DSUF
15 70.) She complained that Korte did several things that made her
16 feel uncomfortable: he invaded her space (despite being informed
17 that she did not like people too close to her), whispered in her
18 ear, followed her when she would try to move away, and told her
19 that she "still drive[s] [him] crazy." (DSUF 71.) Korte was again
20 counseled regarding inappropriate behavior and warned to stay away
21 from the associate in question. (DSUF 72.)

22     In March 2011, Dollar Tree received a Department of Fair
23 Employment and Housing ("DFEH") Complaint of Discrimination filed
24 by a former employee, Laura Gaines, alleging that Korte had
25 subjected her to sexual harassment. Gaines complained that Korte
26 commented on her appearance inappropriately, told her that she

1  should wear her Dollar Tree apron with nothing underneath, and made

2  inappropriate comments when she would bend over. (DSUF 74.)

3      After receipt of the DFEH Complaint, Dollar Tree's Director of

4  Human Resources and its Regional Human Resources Manager met with

5  Korte to discuss Gaines's sexual harassment allegations. (DSUF 75.)

6  Korte was subseqently suspended; Dollar Tree claims this was due to

7  the  DFEH  complaint,  while  Korte  contends  it  was  due  to  age

8  discrimination and retaliation. (DSUF 77; PR-DSUF 76.) Dollar Tree

9  ultimately entered into a monetary settlement with Gaines, which

10  resolved the administrative complaint. (DSUF 79.)

11     After an investigation was concluded, Korte was terminated on

12  April 18, 2011 for "conduct unbecoming an officer of the Company

13  due to inappropriate behavior," both based on his conduct towards

14  Gaines and in the context of the history of complaints against him.

15  (DSUF 81.) Korte contends that his termination was due to age

16  discrimination and retaliation. (PR-DSUF 80.)

17     Dollar Tree moves for summary judgment or partial summary

18  judgment in its favor.

19  **II. STANDARD RE: SUMMARY JUDGMENT**

20     Summary judgment is appropriate "if the movant shows that

21  there is no genuine dispute as to any material fact and the movant

22  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

23  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the movant's

24  burden "to demonstrate that there is 'no genuine issue as to any

25  material fact' and that they are 'entitled to judgment as a matter

26  of law'"); Walls v. Central Contra Costa Transit Authority, 653

1 F.3d 963, 966 (9th Cir. 2011) (same).

2     Consequently, "[s]ummary judgment must be denied" if the court

3 "determines that a 'genuine dispute as to [a] material fact'

4 precludes immediate entry of judgment as a matter of law." <u>Ortiz v.</u>

5 <u>Jordan</u>, 562 U.S. __, 131 S. Ct. 884, 891 (2011), <u>quoting</u> Fed. R.

6 Civ. P. 56(a); <u>Comite de Jornaleros de Redondo Beach v. City of</u>

7 <u>Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (same).

8     Under summary judgment practice, the moving party bears the

9 initial responsibility of informing the district court of the basis

10 for its motion, and "citing to particular parts of the materials in

11 the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact

12 cannot be . . . disputed." Fed. R. Civ. P. 56(c)(1); <u>In re Oracle</u>

13 <u>Corp. Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010)

14 ("The moving party initially bears the burden of proving the

15 absence of a genuine issue of material fact") (citing <u>Celotex v.</u>

16 <u>Catrett</u>, 477 U.S. 317, 323 (1986)).

17     A wrinkle arises when the non-moving party will bear the

18 burden of proof at trial. In that case, "the moving party need only

19 prove that there is an absence of evidence to support the non-

20 moving party's case." <u>Oracle Corp.</u>, 627 F.3d at 387.

21     If the moving party meets its initial responsibility, the

22 burden then shifts to the non-moving party to establish the

23 existence of a genuine issue of material fact. <u>Matsushita Elec.</u>

24 <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986);

25 <u>Oracle Corp.</u>, 627 F.3d at 387 (where the moving party meets its

26 burden, "the burden then shifts to the non-moving party to

1  designate specific facts demonstrating the existence of genuine
2  issues for trial"). In doing so, the non-moving party may not rely
3  upon the denials of its pleadings, but must tender evidence of
4  specific facts in the form of affidavits and/or other admissible
5  materials in support of its contention that the dispute exists.
6  Fed. R. Civ. P. 56(c)(1)(A).

7      The court's function on a summary judgment motion is not to
8  make credibility determinations or weigh conflicting evidence with
9  respect to a disputed material fact. See T.W. Elec. Serv. v. Pac.
10 Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

11      "In evaluating the evidence to determine whether there is a
12 genuine issue of fact," the court draws "all reasonable inferences
13 supported by the evidence in favor of the non-moving party." Walls,
14 653 F.3d at 966. Because the court only considers inferences
15 "supported by the evidence," it is the non-moving party's
16 obligation to produce a factual predicate as a basis for such
17 inferences. See Richards v. Nielsen Freight Lines, 810 F.2d 898,
18 902 (9th Cir. 1987). The opposing party "must do more than simply
19 show that there is some metaphysical doubt as to the material
20 facts . . . . Where the record taken as a whole could not lead a
21 rational trier of fact to find for the nonmoving party, there is no
22 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87
23 (citations omitted).

24 **III. ANALYSIS**

25      **A. Request for Judicial Notice**

26      Dollar Tree has requested that the court take judicial notice

1  of six documents filed in support of its motion. (ECF No. 35.) The
2  court will not rule on the request for judicial notice, as it did
3  not rely on these documents in reaching its decision herein.

4  **B. Evidentiary Objections**

5  "In general, only admissible evidence may properly be
6  considered by a trial court in granting summary judgment."
7  Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324,
8  1335 n.9 (9th Cir. 1980).

9  Dollar Tree has filed objections to 46 statements in a
10  declaration filed by Korte in support of his opposition to this
11  motion. (ECF No. 45.) The majority of these statements do not bear
12  on the court's decision herein, and therefore Dollar Tree's
13  objections to them need not be addressed. The court need only
14  decide evidentiary objections that are material to its ruling.
15  Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010). Any
16  pertinent evidentiary objections will be addressed as they arise.

17  I turn now to the substance of Dollar Tree's motion.

18  **C. Motion for Summary Judgment**

19  As the court is sitting in diversity, it decides this motion
20  under California's substantive law. Erie R.R. Co. v. Tompkins, 304
21  U.S. 64, 78 (1938).

22  **1. Was Korte an exempt employee?**

23  The dispositive question as to many of the issues raised in
24  this motion is whether Korte was exempt from California law
25  governing overtime pay, meal periods, rest breaks, itemized wage
26  statements, and waiting time penalties (the latter for wages not

1  paid upon termination). Dollar Tree contends that Korte, as a Store

2  Manager, was exempt from these protections, and that consequently,

3  it should be granted summary judgment on these claims.

4  **a. Standard for exemption**

5  California law requires that all employees receive overtime

6  compensation and authorizes civil actions to recover unpaid

7  overtime. Cal. Lab. Code §§ 510, 1194.

8  The California Industrial Welfare Commission ("IWC"), a state

9  agency established in 1913, promulgated regulations in the form of

10  "wage orders," which governed employment matters such as maximum

11  hours of work and overtime pay. Indus. Welfare Comm'n. v. Superior

12  Court, 27 Cal. 3d 690, 700 (1980); Cal. Lab. Code § 70. "The IWC's

13  wage orders, although at times patterned after federal regulations,

14  also sometimes provide greater protection than is provided under

15  federal law . . . ." Ramirez v. Yosemite Water Co., Inc., 20 Cal.

16  4th 785, 795 (1999); 29 U.S.C. § 218(a). In issuing its wage

17  orders, "the IWC acted in a quasi-legislative capacity. Although

18  the IWC was defunded effective July 1, 2004, its wage orders remain

19  in effect." Johnson v. Arvin-Edison Water Storage Dist., 174 Cal.

20  App. 4th 729, 735 (2009) (internal citations omitted).

21  Cal. Lab. Code § 515(a) authorized the IWC to "establish

22  exemptions [subject to certain qualifications] from the requirement

23  that an overtime rate of compensation be paid . . . for executive,

24  administrative, and professional employees . . . ." As statutory

25  protections for overtime pay are to be liberally construed, any

26  "exemptions from statutory mandatory overtime provisions are

narrowly construed." <u>Ramirez</u>, 20 Cal. 4th at 794. Application of the exemptions is "limited to those employees plainly and unmistakably within their terms." <u>Nordquist v. McGraw-Hill Broad. Co.</u>, 32 Cal. App. 4th 555 (1995). Further, "the assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption." <u>Ramirez</u>, 20 Cal. 4th at 794-5.

IWC Wage Order No. 7, which regulates wages, hours, and working conditions in California's mercantile industry (and therefore applies to Dollar Tree), exempts from overtime pay requirements "persons employed in administrative, executive, or professional capacities." Cal. Code Regs. tit. 8, § 11070(1)(A). The executive exemption, at issue in this motion, applies to any employee:

> (a) whose duties and responsibilities involve the management of the enterprise in which he is employed, or of a customarily recognized department or subdivision thereof;

> (b) who customarily and regularly directs the work of two or more other employees therein;

> (c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight;

> (d) who customarily and regularly exercises discretion and independent judgment;

1     (e) who is primarily engaged in duties which meet the test of

2     the exemption; and

3     (f) whose monthly salary is equivalent to no less than two

4     times the state minimum wage for full-time employment.

5 Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(a)-(f).

6     For our purposes, the critical requirement lies in subsection

7 (e): was Korte "primarily engaged in duties which meet the test of

8 the exemption"? The IWC defines "primarily" as "more than one-half

9 the employee's work time." IWC Wage Order No. 7-2001, § 2(K). The

10 applicable regulation provides that, in making this determination,

11 "[t]he work actually performed by the employee during the course of

12 the workweek must, first and foremost, be examined and the amount

13 of time the employee spends on such work . . . shall be

14 considered." Cal.Code Regs. tit. 8, § 11070(1)(A)(1)(e). But courts

15 are not just to make a quantitative evaluation in determining

16 whether the exemption applies. Rather:

17     A trial court [must inquire] into the *realistic*
     requirements of the job. In so doing, the court should
18     consider, first and foremost, how the employee actually
     spends his or her time. But the trial court should also
19     consider whether the employee's practice diverges from
     the employer's realistic expectations, whether there was
20     any concrete expression of employer displeasure over an
     employee's substandard performance, and whether these
21     expressions were themselves realistic given the actual
     overall requirements of the job.
22

23 <u>Ramirez</u>, 20 Cal. 4th at 802 (emphasis in original). This test seeks

24 to account for attempts, by either side, to game a purely-

25 quantitative system: the employer who tries to avoid paying

26 overtime "by fashioning an idealized job description [with] little

1  basis in reality", and the employee who falls "below the 50 percent
2  mark due to his own substandard performance." Id.

3      Dollar Tree, as the employer, "bears the burden of proving the
4  employer's exemption." Id. at 794-5. And on summary judgment, it
5  "bears the [initial] burden of proving the absence of a genuine
6  issue of material fact" as to the exemption's existence. Oracle
7  Corp., 627 F.3d at 387.

8                    **b. Korte's evidence**

9      Whether the executive exemption applies to Korte turns not
10 only on the undisputed facts, but also on statements in Korte's
11 declaration, submitted in opposition to this motion. I have
12 considered Dollar Tree's evidentiary objections to the relevant
13 paragraphs of the declaration, and set forth those statements which
14 appear to be free of appropriate objection:

15      •    While a Store Manager, up until the time of my
            termination in April 2011, I was required to undertake
16          the freight duties at my store, as I did not have a
            Freight Manager. (Plaintiff's Declaration in Opposition
17          to Defendant's Motion for Summary Judgment ("Korte
            Decl.") ¶ 18, ECF No. 38.)
18
19      •    I requested that a Freight Manager be assigned to my
            store, or, that I be given the authority to hire a
20          Freight Manager from outside Dollar Tree. (Korte Decl.
            ¶ 18.)

21      •    I was instructed by management not to do the freight
            function, but not provided the means (bodies) to make
22          that happen. (Korte Decl. ¶ 18.)

23      •    I was not able to submit said certification on many, if
            not most weeks, while I was a Store Manager (2007-2011),
24          because I was doing primarily non-exempt duties. (Korte
            Decl. ¶ 28.)
25
26      •    As was noted earlier herein, I did not have a freight
            manager and thus was required to do the freight duties at

                                13

1        my store. (Korte Decl. ¶ 28.)[3]

2    •    I also performed many other non-exempt functions,
         including, but not limited to, stocking shelves, moving
3        merchandise, and checking out customers. (Korte Decl.
         ¶ 28.)

4

5    •    I received calls from many in Dollar Tree management,
         including, but not limited to, Patricia Doss at
6        corporate, a Dollar Tree attorney who described herself
         as a compliance manager, Market Manager Carlos Hernandez
         and District Manager Melissa Ruzyla, Sacramento
7        Compliance Manager Julia Giddens, Human Resources Manager
         for Northern California Candance [sic] Camp, all had
8        conversations with me about my non compliance. All
         expressed concern that I was non compliant. (Korte Decl.
9        ¶ 29.)

10   •    I was never provided with the freight manager. (Korte
         Decl. ¶ 29.)

11

12                **c. Dollar Tree's initial showing**

13       Dollar Tree "bears the [initial] burden of proving the absence

14  of a genuine issue of material fact" as to whether Korte is subject

15  to the executive exemption. Oracle Corp., 627 F.3d at 387.

16       Dollar Tree contends that Korte qualified for the executive

17  exemption because it "realistically expected that [he] would be

18  primarily engaged in exempt duties as a store manager." (Memorandum

19  of Points and Authorities in Support of Motion for Summary Judgment

20  and/or Partial Summary Judgment ("Motion") 16:21-23, ECF No. 33.)

21  It communicated this expectation to him "both through the

22  certification process and through the inquiries he received when he

23  responded that he was not performing managerial duties over 50% of

24

25       [3] As explained, this portion of the opinion deals only with
    evidentiary objections.  Clearly, the plaintiff's assertion of
26  requirement is factually in dispute.

                                    14

the time." (Motion 17:7-10.) When Korte explained that he spent more than 50% of his time on non-managerial duties because he lacked a Freight Manager, Dollar Tree instructed him to train one of his Assistant Store Managers to be the Freight Manager. (Motion 17:11-13.) In light of these facts, according to Dollar Tree, Korte was evading the exemption "by failing to adhere to Dollar Tree's clearly communicated expectations" and "due to his own substandard performance." (Motion 17:17-18, 17:23.) The company cites <u>Ramirez</u> for the proposition that "an employee who is supposed to be engaged in [exempt] activities during most of his working hours and falls below the 50 percent mark due to his own substandard performance should not thereby be able to evade a valid exemption." 20 Cal. 4th at 802. Dollar Tree's argument, essentially, is that Korte spent more than 50 percent of his time on non-exempt functions because he failed to meet the company's realistic expectations for job performance.

These averments, and the evidence proffered in support, are sufficient to meet Dollar Tree's initial burden on summary judgment.

### d. Korte's demonstration of a genuine issue of material fact

The burden now shifts to Korte, who must now establish that there is a genuine issue of material fact as to whether he was an exempt employee. Korte alleges that, during the relevant weeks, he was performing primarily non-exempt functions: "I was not able to submit said certification [that I had spent more than 50% of my

15

work time on exempt duties] on many, if not most weeks, while I was a Store Manager (2007-2011), because I was doing primarily non-exempt duties." (Korte Decl. ¶ 28.) This statement satisfies Korte's burden as to the quantitative factor under the exemption, *i.e.*, that there were weeks in which he spent more than 50% of his time doing non-exempt work.

What remains is the inquiry prescribed by the California Supreme Court as to "whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job." <u>Ramirez</u>, 20 Cal. 4th at 802.

Korte disputes Dollar Tree's contention that he spent more than 50 percent of his time on non-exempt functions because he failed to meet the company's realistic expectations for job performance. He argues that "Dollar Tree management's displeasure with [his] non compliance was not realistic, given the fact [that he] had informed them on multiple occasions of his need for a Freight Manager in order to comply." (Plaintiff's Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Opposition") 5:6-8.) In support, he cites paragraph 18, 28, and 29 of his declaration, which are largely reproduced above under the heading "Korte's evidence." But these paragraphs are insufficient to rebut Dollar Tree and create a genuine issue of material fact, as they fail to explain why Korte did not simply

1 train one of his Assistant Store Managers to be a Freight Manager,

2 as Dollar Tree directed.

3      Nonetheless, Korte's deposition transcript, relied upon by

4 Dollar Tree, contains the following exchange. The highlighted

5 passages are those cited by Dollar Tree in support of its motion:

> Q.   [T]he instruction from Dollar Tree[,] from Melissa
>       Ruzylo, your superior, was to train one of your
>       existing assistant store managers to be the freight
>       manager, correct?
>
> A.   Yes. And I asked her--
>
> Q.   And you resisted that because you didn't think it
>       was possible?
>
> A.   No, I did not resist it. I asked her to transfer
>       one of those people out and transfer somebody else
>       in that I could make a freight manager.
>
> Q.   You said, "I don't think I can make any of these
>       freight managers," correct? You resisted that
>       direction. Your judgment was they couldn't be
>       freight managers?
>
> A.   My judgment was correct.
> (Deposition of Eugene Korte 179:24-180:13, ECF No. 33-6.)

17 While it is undisputed that Korte "was instructed to train one of

18 his [Assistant Store Managers] to be the Freight Manager" (DUSF

19 45), here, Korte is claiming that these expectations were

20 unrealistic because, in his judgment, the Assistant Store Managers

21 under his supervision could not fulfill the Freight Manager

22 function. Arguably, his assertion gives rise to a genuine issue of

23 material fact, *i.e.*, whether, in directing Korte to train one of

24 his assistant store managers to perform the freight manager

25 function, Dollar Tree's expectations were "realistic given the

26 actual overall requirements of the job." Ramirez, 20 Cal. 4th at

802. Korte was of the view that these expectations were not realistic given his staff's capabilities. Korte's deposition testimony therefore provides "sufficient evidence supporting the claimed factual dispute . . . to require a judge or jury to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Accordingly, summary judgment must be denied as to whether Korte was exempt from California's overtime laws.

Dollar Tree has also moved for summary judgment on Korte's claims for violations of California's meal period, rest break, itemized wage statement, and waiting time statutes, on the grounds that his exempt status moots these claims. As Korte has demonstrated that a genuine dispute exists as to whether he fell under the executive exemption, the court must deny Dollar Tree summary judgment on these claims as well.

### 2. Can Korte make out a claim for retaliation?

Korte contends that Dollar Tree terminated him in retaliation for his filing of certifications showing that he spent a majority of his time on non-exempt functions, and for his communications with his superiors regarding this fact. Korte argues that, by simultaneously directing him to spend the majority of his time on exempt activities, while failing to provide him with the staff necessary to achieve this goal, Dollar Tree implicitly encouraged him to lie about his duties on his weekly certifications, and thereby participated in a violation of state wage and hour law. (Opposition 7:2-22.)

1     Korte's  retaliation  claims  are  brought  under  the  First
2 Amendment, as well as under Cal. Lab. Code §§ 98.6 and 1102.5.[4]
3 Dollar  Tree  is  granted  partial  summary  judgment  on  the  First
4 Amendment claim, as Korte concedes this point. (Opposition 3:9-10.)

5     Dollar Tree raises two lines of defense to Korte's Labor Code
6 claims.  First,  it  contends  that  they  are  barred  for  failure  to
7 exhaust  administrative  remedies,  and  second,  that  they  are  not
8 cognizable under either Labor Code provision cited. Suffice it to
9 say that there is no binding precedent on these questions, and
10 courts remain sharply divided on all of them.[5]

11 _____

12     [4]  In his Opposition, Korte argues,  in passing,  that his
retaliation claim is also actionable as a violation of California's
13 public  policy,  citing  Rojo v. Kliger,  52 Cal. 3d 65 (1990)
(granting leave to amend to plead a cause of action for wrongful
14 discharge in violation of public policy). However, Korte has failed
to plead this cause of action in his complaint. Having previously
15 granted him leave to amend (ECF No. 18), the court declines to do
so again.

16     [5]  For  opinions  holding  that  plaintiffs  need  not  exhaust
administrative  remedies  before  suing  under  the  California  Labor
17 Code, see Creighton v. City of Livingston, No. CV-F-08-1507-OWW-
SMS, 2009 WL 3246825, 2009 U.S. Dist. LEXIS 93720 (E.D. Cal. Oct.
18 7,  2009)  (Wanger,  J.)  ("Exhaustion  of  administrative  remedies
before the Labor Commissioner before filing suit for statutory
19 violations  of  the  Labor  Code  is  not  required  under  California
law"); Turner v. San Francisco, 892 F. Supp. 2d 1188, 1202 (N.D.
20 Cal.  2012)  (Chen,  J.)  ("The Court finds that exhaustion under
§ 98.7 is not required before bringing a civil action under §§ 98.6
21 and 1102.5"). For opinions holding otherwise, see Dolis v. Bleum
USA, Inc., No. 11-CV-2713-TEH, 2011 WL 4501979, 2011 U.S. Dist.
22 LEXIS 110575 (N.D. Cal. Sep. 28, 2011) (Henderson, J.) (barring
§ 1102.5(c) claim for failure to exhaust administrative remedies
23 with the Labor Commissioner); Ferretti v. Pfizer Inc., 855 F. Supp.
2d 1017, 1024 (N.D. Cal. 2012) (Koh, J.) (same).
24     For opinions holding that the California Labor Code does not
provide a right of action to employees who allege retaliation after
25 complaining  to  their  private-sector  employers,  see  Hollie v.
Concentra Health Servs., Inc., No. C 10-5197-PJH, 2012 WL 993522,
26 2012 U.S. Dist. LEXIS 40203 (N.D. Cal. Mar. 23, 2012) (Hamilton,

1    Nevertheless, even if Korte can clear these hurdles, Dollar

2 Tree must still be granted summary judgment on the retaliation

3 claims.

4    In addressing claims of employer retaliation, California

5 courts apply the burden-shifting approach articulated by the U.S.

6 Supreme Court in McDonnell-Douglas Corp. v. Green, 411 U.S. 792,

7 802 (1973). In order to establish a prima facie case, the plaintiff

8 employee must demonstrate that: 1) the employee engaged in

9 protected activity; 2) the employer subjected the employee to an

10 adverse employment action; and 3) there was a causal link between

11 the protected activity and the adverse employment action. Muniz v.

12 United Parcel Service, Inc., 731 F. Supp. 2d 961, 969 (N.D. Cal.

13 2010) (Wilken, J.). Once the plaintiff has established a prima

14 facie case, the defendant employer is required to offer a

15 legitimate, non-discriminatory reason for the adverse employment

16 action. Patten v. Grant Joint Union High School Dist., 134 Cal.

17 App. 4th 1378, 1384 (2005). The burden then shifts back to the

18 plaintiff to show that the explanation given by the employer for

19 the adverse employment action is "mere pretext." Id.

20

21 J.) ("[T]he court finds as a matter of law that neither the
   verbal/e-mail protests, nor the protests 'by conduct,' were
22 activities protected under § 98.6"); Weingand v. Harland Fin.
   Solutions, No. C-11-3109-EMC, 2012 WL 3537035, 2012 U.S. Dist.
23 LEXIS 114651 (N.D. Cal. Aug. 14, 2012) (Chen, J.) (dismissing
   § 98.6 retaliation claim where "[p]laintiff merely allege[d] that
24 he complained of his employer's conduct within the company
   itself"). For an opinion holding otherwise, see Muniz v. United
25 Parcel Serv., Inc., 731 F. Supp. 2d 961, 970 (N.D. Cal. 2010)
   (Wilken, J.) (holding that refusal to accede to employer's alleged
26 practice of hiding wage-and-hour violations could give rise to a
   claim under § 98.6).

1    The critical factor, in the court's view, is whether Korte can
2 make out a prima facie case for causation. The record does not
3 reveal any direct evidence of a causal link between Korte's failure
4 to certify that he was spending the majority of his time on exempt
5 tasks, and his subsequent termination. And while causation may be
6 inferred from temporal proximity, "[t]he cases that accept mere
7 temporal proximity between an employer's knowledge of protected
8 activity and an adverse employment action as sufficient evidence of
9 causality to establish a prima facie case uniformly hold that the
10 temporal proximity must be 'very close.'" <u>Clark County School Dist.
11 v. Breeden</u>, 532 U.S. 268, 273 (2001).

12    What the record demonstrates is that Korte spent years filing
13 certifications of his non-exempt status and discussing the issue
14 with management, all without being subjected to adverse action. His
15 declaration provides, "I was not able to submit said certification
16 on many, if not most weeks, while I was a Store Manager (2007-
17 2011), because I was doing primarily non-exempt duties. . . [F]or
18 much of the relevant period, up to the time of my termination in
19 April 2011, I did not have a freight manager and thus was required
20 to do the freight duties at my store." (Korte Decl. ¶ 28.) While he
21 communicated with numerous superiors regarding the certification
22 issue, there is no evidence that, as April 2011 approached, these
23 communications grew more frequent or that he was given warnings of
24 any kind. Rather, matters seem to have continued apace.[6]

25 ───────────────
26    [6] For example, Dollar Tree has submitted Korte's performance
   evaluation for 2009/2010. Korte received the following comments in

1 Accordingly, the court cannot infer causation based on temporal
2 proximity.

3     What did change in April 2011 was that Dollar Tree entered
4 into a monetary settlement with a former employee whom Korte was
5 alleged to have harassed and who had filed a DFEH complaint about
6 his behavior. Korte had been the subject of sexual harassment
7 complaints for going on nine years, but it appears that this was
8 the first time the company incurred any financial liability as a
9 result of his conduct. Korte was terminated that same month.
10 Korte's termination appears causally linked to this incident,
11 rather than to the certifications he had been filing for four
12 years.

13     As Dollar Tree has shown "an absence of evidence to support
14 [Korte's] case" for retaliatory termination, based on lack of
15 evidence of causation, the burden now shifts to Korte to "designate
16 specific facts demonstrating the existence of genuine issues for
17 trial." <u>Oracle Corp.</u>, 627 F.3d at 387. This he fails to do. While

18 

19 the area of Personnel Management:
    [Korte] currently has 3 [Assistant Store Managers] under
20     his management, yet he has not trained any of the three
    to be a Merchandise Manager. Instead of doing so, he
21     continues to manage the freight processing procedures
    himself. To alleviate undo [ *sic*] pressure to conduct
22     Store Manager functions in conjunction with the freight
    processing, I would like to see [Korte] give ownership
23     of the Merchandise Manager to one of his ASM's and train
    them appropriately. (Exhibit I to Declaration of David
24     McDearmon in Support of Motion for Summary Judgment, ECF
    No. 33-3.)
25 The signatures of Korte's managers on this document are dated June
7, 2010. The court cannot infer causation from a subjunctive
26 statement ("I would like to see...") made some ten months before
Korte's termination.

22

1  Korte argues that he was suspended and then terminated for
2  retaliatory reasons, he has not introduced a single fact to support
3  that position. He does allege that the DFEH sexual harassment
4  complaint had "no merit," that he "was informed, by Dollar Tree
5  management and counsel, that they also felt [the] claims to be
6  without merit," and that the matter "was ultimately settled for
7  what was termed by Dollar Tree management and counsel as 'nuisance
8  value.'" (Korte Decl. ¶ 23.) But none of this demonstrates that his
9  termination was the result of repeatedly certifying that the
10 majority of his work hours were spent on non-exempt functions. His
11 statement that "I believe that Dollar Tree terminated me because I
12 would not 'certify' that I was performing exempt functions for over
13 50% of my work day" (id.) is conclusory and has no evidentiary
14 weight. Nor can the court infer that Korte suffered a retaliatory
15 termination, for Korte has failed to produce a factual predicate on
16 which to base for such an inference. See Richards, 810 F.2d at 902.

17     In short, the record, taken as a whole, could not "lead a
18 rational trier of fact to find for" Korte. Matsushita, 475 U.S. at
19 586-87. Summary judgment will therefore be entered for Dollar Tree
20 on the retaliation claim.

21          **3. Can Korte seek punitive damages in this lawsuit?**

22     Partial summary judgment must also be entered on Korte's
23 prayer for punitive damages, as the prayer is derivative of his
24 retaliation claim. (First Amended Complaint 8, ECF No. 19.)

25          **4. Has Korte made out a claim for age discrimination?**

26     Korte contends that Dollar Tree unlawfully terminated him due

to his age. The California Fair Employment and Housing Act ("FEHA") outlaws employment discrimination against individuals over forty. Cal. Gov't Code §§ 12926(b), 12940. "California has adopted the three-stage [McDonnell Douglas] burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination, based on a theory of disparate treatment." Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 354 (2000). Under this test:

> A plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for a discriminatory motive.

Llamas v. Butte Cmty. Coll. Dist., 238 F.3d 1123, 1126 (9th Cir. 2001).

At trial, Korte would bear the burden of proof to show age discrimination. Accordingly, at summary judgment, Dollar Tree "need only prove that there is an absence of evidence to support [Korte's claim]." Oracle Corp., 627 F.3d at 387. To achieve this, Dollar Tree may show "either that (1) plaintiff could not establish one of the elements of the FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." Dep't of Fair Emp't and Hous. v. Lucent Technologies, 642 F.3d 728, 745 (9th Cir. 2011) (internal citations and brackets omitted).

To prove his FEHA claim, Korte must demonstrate that (1) he

1  suffered an adverse employment action, such as termination; (2) at

2  the time of the adverse action, he was over the age of 40; (3) at

3  such time, he was performing his job competently; and (4) some

4  other circumstance suggests discriminatory motive. See Guz, 24

5  Cal. 4th at 355. "While the plaintiff's prima facie burden is not

6  onerous, he must at least show actions taken by the employer from

7  which one can infer, if such actions remain unexplained, that it is

8  more likely than not that such actions were based on a prohibited

9  discriminatory criterion." Id. (internal citations and quotations

10  omitted).

11       There appears little question that the first two elements are

12  satisfied: Korte was terminated on April 18, 2011, at the age of

13  58. (DUSF 83.)

14       Korte next claims that he was performing his job competently

15  at the time he was terminated. His declaration provides:

16       I always performed my job duties in an exemplary manner.
         This is confirmed in my evaluations which were always
17       between "meets expectations" and "exceeds expectations."
         I did not receive any evaluations which were "below
18       expectations" and/or "needs improvement." This was true
         even in those years when a sexual harassment claim had
19       been made. (Korte Decl. ¶ 30.)

20  On this basis, he argues that "[t]here are no facts which indicate

21  that Korte did not perform his job function adequately or that

22  Dollar Tree did not consider Korte to be performing his job

23  function adequately." (Opposition 5.)

24       Dollar Tree's evidentiary objections to Korte's statement are

25  not well taken. It is true that, taken alone, the assertion "I

26  always performed my job duties in an exemplary manner" would be

conclusory and therefore insufficient to support Korte's opposition. <u>Angel v. Seattle-First Nat. Bank</u>, 653 F.2d 1293, 1299. But Korte bases his assertion (writing "This is confirmed...") on the statements in his evaluations; these statements are non-hearsay, as they were both made by and offered against Dollar Tree. Fed. R. Evid. 801(d)(2). Dollar Tree's objection on best evidence rule grounds, Fed. R. Evid. 1002, also fails because "an event may be proved by nondocumentary evidence" – in this case, Korte's perceptions – "even though a written record of it was made." Advisory Committee's Notes on Fed. R. Evid. 1002 (1972). Finally, Korte's statement is relevant, as it makes his assertion of competence more probably than it would otherwise be, and competence is a necessary element of his prima facie case under FEHA.

The question then becomes whether Korte can be said to have made out a prima facie case that he was performing his job duties competently when he was terminated, given that he had been repeatedly disciplined for violations of Dollar Tree's sexual harassment policy, and, according to Dollar Tree, he was terminated over the final incident of harassment.

Let us assume, *arguendo,* that Korte has made out a prima facie case on this element.

Nevertheless, he cannot establish the final element of his case, that some other circumstance suggests he was discriminated against based on his age.

In his declaration, Korte identifies the following statements made by Dollar Tree management that he claims demonstrate bias

against older workers:

> a. Regional Director Cindy Ray, referring to a Dollar Tree employee, stated he was "old thinking" with "old habits" and was "too old, too stupid and missed too much time."
>
> b. District Manager Paul Massey stated, in 2007, regarding 2 store managers, Connie Vischer and Jerry Littell, that they had "been around forever", that they were old and too stupid to run the business and needed to go.
>
> c. Market Manager Carlos Hernandez said concerning Jerry Littell in December 2010, "why can't people get this done...Are they too stupid or too old to comply?"
>
> d. Regional Director Matt Rodriguez said of employee Jim Wackford that Wackford had to go as he was "too old and stupid" to change his ways.
>
> e. Zone Manager Jim Dunaway said of Wackford that he was "too old school" and "not going to change."
>
> f. Regional Manager Rodriguez said of District Manager Spuinuzzi that he had "a 99 cent store mentality", that he was "too old and stupid to change to the ways of Dollar Tree."
>
> g. Market Manager Hernandez said of Store Manager Connie Vischer that she would not be returning to her earlier training duties and would be "better off just retiring." (Korte Decl. ¶ 38.)

In the context of employment discrimination suits, such statements are termed "stray remarks," *i.e.*, "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decision process itself." <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 277 (1989). Under federal antidiscrimination law, such remarks are largely deemed irrelevant, and their assertion is insufficient to withstand summary judgment. <u>Reid v. Google, Inc.</u>, 50 Cal. 4th 512, 536-7 (2010) (summarizing cases). California, by contrast, takes a "totality of the circumstances" approach to stray remarks: in

1 evaluating FEHA claims, courts should consider stray remarks along
2 with all of the other evidence in the record to determine whether
3 the remarks "create an ensemble that is sufficient to defeat
4 summary judgment." Id. at 539, 541, 542 (internal quotation and
5 citation omitted). For example, in Reid, an age discrimination
6 case, the plaintiff survived summary judgment because his evidence
7 of stray remarks was accompanied by incriminating emails,
8 statistical evidence of discrimination by the employer, the
9 plaintiff's demotion to a nonviable position before termination,
10 and evidence of changed rationales by the employer for the
11 plaintiff's termination. Id. at 545. Moreover, many of the stray
12 remarks in Reid concerned the plaintiff personally. Id. at 536.

13     By contrast, Korte has nothing beyond the stray remarks (none
14 of which concern him) to buttress his allegations of age
15 discrimination. His only other allegation concerning age
16 discrimination reads, "I do not believe th[e] Gaines complaint had
17 anything to do with my termination. I believe I was terminated
18 because of my age." (Korte Decl. ¶ 23). This statement is
19 conclusory and lacks any evidentiary foundation. Korte provides no
20 evidence to demonstrate that age played a role in his termination
21 other than the stray remarks listed above. As such, his statement
22 is inadmissible under Fed. R. Evid. 602.

23     Korte does argue that "[t]he [Gaines] matter was ultimately
24 settled for what was termed by Dollar Tree management and counsel
25 as 'nuisance value'" and "[n]o one from Dollar Tree ever told me
26 that they believed Ms. Gaines [sic] claims to be credible and/or

with merit," (Korte Decl. ¶ 23). Nonetheless, he proffers no evidence "from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion." Guz, 24 Cal. 4th at 355.

In sum, even when considered with the other evidence presented by Korte, the stray remarks he documents are insufficient to make out a prima facie case that age discrimination played a role in his termination.

Accordingly, Dollar Tree is granted partial summary judgment on Korte's claim of age discrimination under FEHA.

**D. Request to Seal**

Pursuant to Local Rule 141, Dollar Tree requests that the court seal more than two dozen documents filed in support of this motion. (Notice of Request to Seal, ECF No. 32.) It also moves to seal two lines in its Memorandum of Points and Authorities, two undisputed facts, and two paragraphs of a supporting declaration. (Id.)

Korte does not oppose the sealing request. Nevertheless, Dollar Tree bears the burden of demonstrating that the requested sealing order should issue.

**1. Standard re: Sealing of Records**

Courts have long recognized a "general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally

1  kept secret,' a 'strong presumption in favor of access' is the
2  starting point." <u>Kamakana v. City and Cnty. of Honolulu</u>, 447 F.3d
3  1172, 1178 (9th Cir. 2006) (quoting <u>Foltz v. State Farm Mut. Auto.</u>
4  <u>Ins. Co.</u>, 331 F.3d 1122, 1135 (9th Cir. 2003)). In order to
5  overcome this strong presumption, a party seeking to seal a
6  judicial record must articulate justifications for sealing that
7  outweigh the historical right of access and the public policies
8  favoring disclosure. <u>See</u> <u>id.</u> at 1178–79.

9       The Ninth Circuit has determined that the public's interest in
10 non-dispositive motions is relatively lower than its interest in
11 trial or a dispositive motion. Accordingly, a party seeking to seal
12 a document attached to a non-dispositive motion need only
13 demonstrate "good cause" to justify sealing. <u>Pintos v. Pac.</u>
14 <u>Creditors Ass'n</u>, 605 F.3d 665, 678 (9th Cir. 2010) (applying "good
15 cause" standard to all non-dispositive motions because such motions
16 "are often unrelated, or only tangentially related, to the
17 underlying cause of action") (internal quotation marks and citation
18 omitted).

19      Conversely, "the resolution of a dispute on the merits,
20 whether by trial or summary judgment, is at the heart of the
21 interest in ensuring the 'public's understanding of the judicial
22 process and of significant public events.'" <u>Kamakana</u>, 447 F.3d at
23 1179 (quoting <u>Valley Broad. Co. v. U.S. Dist. Court for Dist. of</u>
24 <u>Nev.</u>, 798 F.2d 1289, 1294 (9th Cir. 1986)). Accordingly, a party
25 seeking to seal a judicial record attached to a dispositive motion
26 or one that is presented at trial must articulate "compelling

reasons" in favor of sealing. <u>See</u> <u>id.</u> at 1178. "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." <u>Id.</u> at 1179 (citing <u>Foltz</u>, 331 F.3d at 1136). "In general, 'compelling reasons' . . . exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." <u>Id.</u> (citing <u>Nixon</u>, 435 U.S. at 598).

Under the "compelling reasons" standard, a district court must weigh "relevant factors," base its decision "on a compelling reason," and "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." <u>Pintos</u>, 605 F.3d at 679 (quoting <u>Hagestad v. Tragesser</u>, 49 F.3d 1430, 1434 (9th Cir. 1995)). "[S]ources of business information that might harm a litigant's competitive standing" often warrant protection under seal. <u>Nixon</u>, 435 U.S. at 598. But "the party seeking protection bears the burden of showing specific prejudice or harm will result if no [protection] is granted." <u>Phillips v. Gen. Motors Corp.</u>, 307 F.3d 1206, 1210–11 (9th Cir. 2002). Consequently, that party must make a "particularized showing of good cause with respect to any individual document." <u>San Jose Mercury News, Inc. v. U.S. Dist. Court, N. Dist. (San Jose)</u>, 187 F.3d 1096, 1103 (9th Cir. 1999). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. <u>Beckman Indus., Inc. v. Int'l Ins. Co.</u>, 966 F.2d 470, 476 (9th Cir. 1992)

1  (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd

2  Cir. 1986)).

3              **2. Dollar Tree's boilerplate justifications for sealing**

4        With respect to most of the documents and information it seeks

5  to seal, Dollar Tree has completely failed to make any "showing

6  [of] specific prejudice or harm," Phillips, 307 F.3d at 1210-11, or

7  a "particularized showing of good cause," San Jose Mercury News,

8  187 F.3d at 1103.

9        Much of Dollar Tree's Request to Seal repeats the following

10 boilerplate:

11         [The document] . . . contains confidential and
           proprietary information regarding Dollar Tree's
12         [BOILERPLATE 1]. In the highly competitive retail
           industry, the confidentiality of information that relates
13         to Dollar Tree's [BOILERPLATE 2] is critical to maximize
           the company's competitive advantage. Disclosure of such
14         information would be detrimental to Dollar Tree's
           financial and competitive interests. Cal. Civ. Code §§
15         3426.1; 3426.5.[7] Dollar Tree's request to seal these
           exhibits is narrowly tailored given that the exhibit
16         cannot be redacted in a meaningful way, and no less
           restrictive means exist to achieve the overriding
17         interest in protecting the confidentiality of the
           information.
18
   In place of [BOLERPLATE 1], Dollar Tree uses one or more of the
19
   following phrases: "business model"; "human resources policies";
20
   "human resources practices"; "operational policies"; "operational
21
   procedures"; "ordering processes"; "pay practices"; and "store
22
   budgets." In place of [BOILERPLATE 2], Dollar Tree deploys one or
23

24        [7] Cal. Civ. Code § 3426.1 defines various terms, including
   "trade secret," under California's implementation of the Uniform
25 Trade Secrets Act. Cal. Civ. Code § 3426.5 directs courts to
   "preserve the secrecy of an alleged trade secret by reasonable
26 means . . . ."

more of the following phrases: "compensation structure"; "human resources policies"; "human resources practices"; "operational procedures"; "proprietary business model"; and "proprietary operational procedures." (The supporting Declaration of Lisa K. Horgan is similarly robotic.) As a result, the court determines that defendant has failed to articulate a factual basis for sealing the requested documents unless the court relies on hypothesis or conjecture - which it declines to do. <u>Pintos</u>, 605 F.3d at 679

As a result, the court finds that Dollar Tree has simply failed to demonstrate a compelling reason to seal the following: Exhibits A, B, C, D, E, F, G, H, I, J, and L to the Declaration of David McDearmon in Support of Motion for Summary Judgment ("McDearmon Declaration"), ECF No. 33-3), Exhibits D, O, P, Q, R, U, V, and W to the Declaration of Maureen McClain in Support of Motion for Summary Judgment ("McClain Declaration"), ECF No. 33-6), and paragraphs 5 & 6 of the Declaration of Jeff Whitemore in Support of Motion for Summary Judgment ("Whitemore Declaration"), ECF No. 33-4).

Dollar Tree also seeks to justify redaction (rather than wholesale sealing) of certain documents using nearly identical boilerplate. Accordingly, the court finds that Dollar Tree has failed to demonstrate good cause for redacting the following: Exhibits L, M, N to the McClain Decl., lines 5:26 and 17:27-18:1 of the Memorandum of Points and Authorities in Support of Motion for Summary Judgment (ECF No. 33), and undisputed facts nos. 50 & 51 (ECF No. 34).

### 3. Third-party employees' personal information

What remains are documents that, to one degree or another, contain information identifying individuals who are not parties to this lawsuit. Some of this is personal information (such as names, dates of birth, and signatures) that obviously increases individuals' risk of identity theft; sealing or redaction is obviously warranted, as this information has no relevance to the outcome of this lawsuit. Many other documents concern Dollar Tree employees' allegations of sexual harassment. This information is obviously relevant to a number of Dollar Tree's defenses, which weighs in favor of unsealing; yet the court is also sensitive to the fact that employees who report sexual harassment in the workplace (in and of itself a courageous act, in the court's view), yet do not commence legal proceedings, surely do not intend their complaints to become public knowledge. With these considerations in mind, each of the documents Dollar Tree seeks to seal are now considered in turn.

Exhibit A to the Declaration of Candace Camp in Support of Motion for Summary Judgment ("Camp Declaration", ECF No. 33-2) consists of emails that include some discussion of an employee's medical conditions. Dollar Tree seeks to seal the entire exhibit, on the grounds that "[t]he individual's circumstances are discussed in detail, making it easy to identify the individual even if the name is redacted." This concern for the employee's privacy rights is warranted. However, portions of the email are relevant to Korte's contention that he could not train his employees to perform

34

1  certain  non-exempt  functions.  An  appropriate  compromise  is

2  redaction  of  the  employee's  name,  the  dates  of  the  employee's

3  medical appointments, and the two medical conditions referenced.

4       Exhibits  B,  D,  and  E  to  the  Camp  Declaration  contain

5  handwritten  notes  about  employees'  complaints  regarding  Korte's

6  alleged sexual harassment. Exhibits C and F to the Camp Declaration

7  are  statements  made  by  employees  about  their  interactions  with

8  Korte.  While  Dollar  Tree  seeks  to  seal  these  exhibits  in  their

9  entirety,  the  court  finds  that  this  solution  is  overbroad,  given

10 that there appears to be no personal identifying information about

11 the employees beyond their names, and in one instance, in Exhibit

12 B, an employee's phone number. Accordingly, these exhibits should

13 be filed with employees' names (other than Korte's) and any phone

14 numbers redacted.

15      Exhibit A to the Whitemore Declaration contains twenty-four

16 employees' names, dates of hire, dates of birth, store assignments,

17 and titles. Dollar Tree seeks to seal this exhibit in its entirety.

18 Sealing,  rather  than  redaction,  appears  appropriate,  for  if  all

19 identifying information were redacted, this document would convey

20 virtually no information to the reader.

21      Exhibits H and I to the McClain Declaration are sign-in sheets

22 from  Dollar  Tree's  District  Manager  and  Store  Manager  Sexual

23 Harassment  Trainings.  This  document  may  be  filed  with  all

24 employees' names and signatures, other than Korte's, redacted.

25      Exhibit K to the McClain Declaration is a statement by an

26 employee detailing Korte's alleged sexual harassment of her. It

1  contains numerous identifying details about the employee, and as
2  such, may be filed under seal.

3      Exhibit S to the McClain Declaration is an employee's
4  performance review, and Exhibit T thereto is an email discussing an
5  employee's management training. In each instance, Dollar Tree seeks
6  only to redact the individual employee's name. Such redaction is
7  narrowly-tailored and appropriate under the circumstances.

8      Note that if, during future proceedings herein, either party
9  introduces the redacted or sealed information into evidence, the
10 court is likely to revisit this order and direct that the relevant
11 records be filed in unredacted or unsealed form.

12 **IV. CONCLUSION**

13     The court orders as follows:

14     [1] Defendant's motion for summary judgment is DENIED.

15

16     [2] Defendant's motion for partial summary judgment is DENIED
17        as to plaintiff's claims for overtime compensation,
18        compensation for meal and rest breaks, failure to provide
19        itemized wage statements, and waiting time penalties.

20

21     [3] Defendant's motion for partial summary judgment is GRANTED
22        as to plaintiff's claims for retaliation under the First
23        Amendment, retaliation under Cal. Lab. Code §§ 98.6 and
24        1102.5, age discrimination under the California Fair
25        Employment and Housing Act, and as to plaintiff's prayer for
26        punitive damages.

[4] Defendants are DIRECTED to file Exhibits A-F to the Camp Declaration, and Exhibits H, I, S, and T to the McClain Declaration, each redacted according to the instructions above, no more than seven (7) days after entry of this order.

[5] Defendants are DIRECTED to file under seal Exhibit A to the Whitemore Declaration and Exhibit K to the McClain Declaration no more than seven (7) days after entry of this order.

[6] As to all other documents that defendant sought to file under seal or in redacted form, defendant's request is DENIED. Defendant is to file unsealed and unreadacted versions of these documents no more than seven (7) days after entry of this order.

IT IS SO ORDERED.

DATED:   June 11, 2013.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

37